**Miguel Abelardo HERNANDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 03–97–00526–CR.

Court of Appeals of Texas, Austin.

Dec. 17, 1998.

David A. Schulman, Schulman & King, Wi-ilie Schmerler, Austin, for Appellant.

Eugene D. Taylor, Williamson County Attorney, Donna King Gafford, Assistant County Attorney, Georgetown, for the State.

Before Chief Justice ABOUSSIE, Justices JONES and YEAKEL.

JONES, Justice.

The trial court, sitting without a jury, found appellant Miguel Abelardo Hernandez guilty of driving while intoxicated and assessed punishment at one hundred eighty days' confinement in jail and a $2,000 fine, with all of the jail time and $1,300 of the fine probated for eighteen months. *See* Tex. Penal Code Ann. §§ 49.01, .04 (West 1994 & Supp.1998). On appeal, appellant asserts that the trial court erred in overruling his motion to suppress because the arresting

officer was not justified in stopping his car. We will reverse the judgment of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of July 17, 1996, Round Rock police officer John Combs stopped appellant's car on a five-lane road in Williamson County. Officer Combs conducted field sobriety tests, which appellant failed. Appellant was then arrested for driving while intoxicated.

Appellant filed a motion to suppress, contending that the initial stop was not justified and, therefore, that all evidence of his intoxication gained as a result of that stop should be excluded. Officer Combs was the only witness who testified at the hearing on appellant's motion. Accordingly, the factual background of this case is taken exclusively from his testimony, the details of which are crucial to our determination of the validity of the stop:

A. [by Officer Combs] I was traveling about the 1800 block of South Mays northbound. Mr. Hernandez was in front of me in his pickup truck in the right-hand lane. While behind him, I observed him swerve to the left failing to maintain a single-marked lane, and I initiated the traffic stop at that time.

Q. [by defense attorney] Did he change lanes?

A. No, sir.

Q. When you say he swerved left, what did his vehicle do?

A. It broke the plane dividing the two lanes.

Q. And how many lanes of traffic are there on that street?

A. Five, total.

Q. And he was in the right lane to begin with?

A. Yes, sir.

Q. And his left wheels crossed over into the second lane?

A. Yes, sir.

Q. About how far into that second lane did they cross over?

A. 18 inches, couple of feet; not much.

Q. And what time of day was this?

A. About 1:30 in the morning, if I remember correctly.

Q. And after his wheels crossed over, did they cross back into the right lane, again?

A. Yes, sir.

Q. And how long after that did you initiate your traffic stop?

A. Just three or four seconds, just long enough to call the plate in.

\* \* \* \* \* \*

Q. Was there anything about his driving other than that lane movement that you observed?

A. No, sir.

Q. And was there anything unsafe or improper about that lane movement?

A. Yes, sir.

Q. What was that?

A. It was failing to maintain a single-marked lane.

Q. Did it cause an accident?

A. No, sir.

Q. Were there other vehicles around?

A. Very few at that time in the morning.

Q. And do you know if it caused any problems for any other vehicles?

A. No, sir.

Q. How was that lane change unsafe?

A. I was concerned about his well-being.

Q. So there wasn't anything about the lane change that was unsafe; you were just concerned about the driver; is that correct?

A. Yes, sir.

\* \* \* \* \* \*

Q. Officer, was the lane-change problem the only reason that you stopped Mr. Hernandez?

A. Yes, sir.

The following additional testimony was elicited from Officer Combs on cross-examination by the prosecutor:

Q. [By the assistant county attorney] Officer Combs, you noted that the pick-

up was in the right-hand lane and swerved to the left.

A. Yes, sir.

Q. When it swerved to the left, did it swerve into a lane of oncoming traffic or just the left-hand lane of the road?

A. Left-hand lane of the road going the same direction.

Q. All right. How would you characterize that swerve? Was it slow? Was it fast?

A. It was slow.

Q. So was it a drift?

A. Yeah, it was, you know, just kind of swerved over and back in.

Q. Do you consider that a dangerous action for someone who's driving?

A. Considering the time of day, I was concerned about his well-being, yes.

Q. Is failure to maintain a single-marked lane a ticketable offense?

A. Yes, sir.

Q. Did the vehicle at any time use his turn signal to indicate that he was attempting to change lanes?

A. No, sir.

Q. Did the vehicle completely go into the left-hand lane?

A. No, sir.

The remainder of Officer Combs's testimony related to the observable indications of appellant's intoxication after the stop was made, including appellant's failure of field sobriety tests.

## DISCUSSION

■ There is no dispute that Officer Combs stopped appellant without a warrant and without appellant's consent; accordingly, at the suppression hearing the State had the burden of proving the reasonableness of the stop. *See Russell v. State*, 717 S.W.2d 7, 9–10 (Tex.Crim.App.1986); *State v. Giles*, 867 S.W.2d 105, 108 (Tex.App.—El Paso 1993, pet. ref'd).

■ A police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of "probable cause." *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Woods v. State*, 956 S.W.2d 33, 35 (Tex.Crim.App. 1997).

> [T]he reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity.

*Woods*, 956 S.W.2d at 38. The court of criminal appeals has also stated the standard as follows: "In assessing whether the intrusion was reasonable, an objective standard is utilized: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim.App.1997). Because the historical facts in the present case are not in dispute, we make a *de novo* determination of whether those facts give rise to a reasonable suspicion of criminal activity. *See Loesch v. State*, 958 S.W.2d 830, 832 (Tex.Crim.App.1997); *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim. App.1997).

As presented and argued by appellant, the issue in this case is not whether Officer Combs had available to him sufficient articulable facts to give rise to a reasonable suspicion that appellant was *intoxicated*, but whether he had available to him sufficient articulable facts to give rise to a reasonable suspicion that appellant had committed *a traffic offense*, to wit, a violation of section 545.060 of the Texas Transportation Code pertaining to driving within a single lane. For the most part, the State responds in the same vein, contending that appellant's "drift" across the lane marker created a reasonable suspicion of criminal activity, "namely a violation of Section 545.060." The State does, however, assert that "[s]hould this Court find that Appellant did not violate Section 545.060, the stop was nonetheless valid under a reasonable suspicion theory that the unusual activity is related to … the offense of

driving while intoxicated." Accordingly, we will address both issues.

### Reasonable Suspicion of Driving While Intoxicated

■ To the extent the State relies on the argument that the facts available to Officer Combs gave rise to a reasonable suspicion that appellant was driving while intoxicated, we reject it. We cannot turn a blind eye to common sense and experience. There are myriad reasons why the wheels of a vehicle might drift slightly across a lane marker a single time. Considering the totality of the circumstances in this case, we simply do not believe the State has carried its burden of proving that appellant's conduct was suspicious enough to warrant police intrusion at the time the stop was made.

The cases cited by the State, and others we have found, are distinguishable because they all involve conduct that gave officers ample reason to suspect that the defendant was driving while intoxicated. *See, e.g., Held v. State,* 948 S.W.2d 45, 51 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd) (officer observed defendant's vehicle weaving randomly in and out of three lanes of traffic); *Ortiz v. State,* 930 S.W.2d 849, 856 (Tex.App.—Tyler 1996, no pet.) (officers saw defendant weave left and hit grassy median, kicking up dirt and grass, then continue to weave inside his lane two or three times); *Davis v. State,* 923 S.W.2d 781, 784, 788 (Tex.App.—Beaumont 1996) (officers saw defendant weave "line to line" multiple times, suspected he was intoxicated), *rev'd on other grounds,* 947 S.W.2d 240 (Tex.Crim.App.1997); *Fox v. State,* 900 S.W.2d 345, 346 (Tex.App.—Fort Worth 1995) (officer followed defendant for four miles, during which time his speed fluctuated between 40 and 55 miles per hour four times and he was weaving within his lane), *pet. dism'd per curiam,* 930 S.W.2d 607 (Tex. Crim.App.1996); *Raffaelli v. State,* 881 S.W.2d 714, 716 (Tex.App.—Texarkana 1994,

pet. ref'd) (officer saw defendant weave back and forth in his lane, then exit interstate at "high rate of speed"); *Townsend v. State,* 813 S.W.2d 181, 185 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) (officer saw defendant weave back and forth across three traffic lanes); *Barraza v. State,* 733 S.W.2d 379, 380 (Tex.App.—Corpus Christi 1987) (officer saw defendant "weaving within his lane" and make "two improper turns"), *aff'd,* 790 S.W.2d 654 (Tex.Crim.App.1990); *Miffleton v. State,* 728 S.W.2d 880, 882 (Tex.App.—Austin 1987) (officer saw defendant driving in an "erratic manner," including rapid acceleration, weaving, and excessive speed), *aff'd,* 777 S.W.2d 76 (Tex.Crim.App.1989).

As pointed out above, the State had the burden of proving that the stop of appellant was reasonable. Yet Officer Combs did not testify that, based on his experience, he subjectively suspected appellant of being intoxicated. Nor did he testify that anything about the objective circumstances—time, location, the vehicle's movement, etc.—would have led a reasonable officer to suspect the driver of being intoxicated. Rather, he testified only that he was concerned about the driver's "well-being." [1] In short, we conclude that the State did not carry its burden of demonstrating the reasonableness of the stop on the basis of a suspicion that appellant was intoxicated.

### Reasonable Suspicion of Traffic Offense

■ The remaining issue is whether (1) a single instance (2) of crossing a lane dividing line by 18 to 24 inches (3) into a lane of traffic traveling the same direction (4) when the movement is not shown to be unsafe or dangerous, gave Officer Combs a reasonable basis for suspecting that appellant had committed a "ticketable"—*i.e.,* criminal—traffic offense. If it did, the stop was valid. *See Garcia v. State,* 827 S.W.2d 937, 944 (Tex.

---

1. We note that in the present case the State has disclaimed any reliance on the existence of a "community caretaking function" exception to the requirement of reasonable suspicion of criminal activity. *See Rheinlander v. State,* 888 S.W.2d 917 (Tex.App.—Austin 1994), *pet. dism'd, permanently abated,* 918 S.W.2d 527 (Tex.Crim. App.1996). In its brief, the State declared that "even assuming the [community caretaking] ex-

ception is accepted in Texas jurisprudence, it is indeed inapplicable to the facts of the instant case, in which Appellant was stopped because he violated a traffic law of the State of Texas." At oral argument, the attorney for the State announced, "We are not relying on the community caretaking function." Accordingly, we do not consider that doctrine as a possible basis for the stop in this case.

Crim.App.1992). We conclude, however, that under the facts of this case it did not.

First, the history of the relevant statutory provision seems to indicate that, with respect to a vehicle's straying over a lane marker, a traffic violation occurs only when the vehicle's movement is in some way unsafe. In 1947 the legislature first enacted a traffic regulation regarding "driving on roadways laned for traffic," which provided as follows:

Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply: (a) The driver of a vehicle shall drive as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

Act of June 5, 1947, 50th Leg., R.S., ch. 421, § 60, 1947 Tex. Gen. Laws 967, 978 (Tex.Rev. Civ.Stat.Ann. art. 6701d, § 60(a), since repealed and recodified at Tex. Transp. Code Ann. § 545.060(a) (West 1997)). This provision remained unchanged until the legislature enacted the Transportation Code in 1995. The replacement provision provides: "An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely." Tex. Transp. Code Ann. § 545.060(a) (West 1997). The enactment of the Transportation Code made no substantive change in the law. *See* Transportation Code, 74th Leg., R.S., ch. 165, § 25, 1995 Tex. Gen. Laws 1025, 1871.

■ We believe the statutory language shows a legislative intent that a violation of section 545.060 occurs only when a vehicle fails to stay within its lane *and* such movement is not safe or is not made safely. Neither the current provision in the Transportation Code nor the original statute creates two separate offenses, but rather only one: moving out of a marked lane when it is not safe to do so. For example, one Texas court of appeals has stated:

The elements of failure to drive in a single marked lane are: (1) a person (2) drives or operates (3) a motor vehicle (4) within a single marked lane, and (5) *moves from that lane without first ascertaining that such movement can be made with safety.* Tex.Rev.Civ. Stat. Ann. art. 6701d § 60(a) (Vernon 1977).

*Atkinson v. State,* 848 S.W.2d 813, 815 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (emphasis added). Moreover, the very vagueness of the requirement that the operator of a vehicle drive within a single lane "as nearly as practical" indicates that the legislature did not intend for the initial clause of the statute to create a discrete offense apart from some element of unsafety. This conclusion is bolstered by the use of the term "practical" rather than "practicable." The latter term has a somewhat more definite meaning: "capable of being accomplished; feasible; possible," while the former term is more ambiguous: "manifested in practice; capable of being put to good use." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 678 (2d ed.1995).

As support for its position that lack of safety is not required for a violation of section 545.060(a), the State cites *Gajewski v. State,* 944 S.W.2d 450 (Tex.App.—Houston [14th Dist.] 1997, no pet.), in which the court stated, "We decline to interpret section 545.060 so as to permit a driver to weave throughout all lanes of traffic so long as no other vehicles are in the immediate vicinity." *Id.* at 453. We believe, however, that a complete reading of *Gajewski* does not support the State's argument, and in fact supports appellant's position. Unlike the present case, the evidence in *Gajewski* showed that the defendant's driving was both outrageous and protracted. Indeed, the central issue was whether Gajewski's driving could give rise to a reasonable suspicion of intoxication even in the absence of a traffic violation:

*Although not an inherently illegal act,* when the officer observed [Gajewski's] car weaving between traffic lanes, reasonable suspicion existed to believe [Gajewski] was driving the motor vehicle while intoxicated, or that some activity out of the ordinary is or has occurred, so as to justify the temporary stop of [Gajewski's] car.

*Id.* at 452 (emphasis added). Even the sentence from *Gajewski* cited by the State, when taken in context, does not support its position here:

In this case, [Gajewski] argues that because there were no other vehicles in his immediate vicinity when he changed lanes, he did not violate section 545.060. We decline to interpret section 545.060 so as to permit a driver to weave throughout all lanes of traffic so long as no other vehicles are in the immediate vicinity.

The street upon which [Gajewski] was traveling is a public two lane roadway. The fact that no other cars were around [Gajewski] at the time he was weaving may be a defense to a traffic citation. However, it does not negate a stop based on reasonable suspicion that the driver of the motor vehicle has lost control of his mental and physical faculties by the ingesting of alcohol and/or drugs.... By weaving across the center line three different times, in addition to weaving across and into another lane, [Gajewski] aroused the suspicion of the arresting officer.

*Id.* at 453. Considering the facts developed and the legal issues involved, we do not believe *Gajewski* furthers the State's argument in the present case.

We conclude that the State did not carry its burden of demonstrating the reasonableness of the stop on the basis of a suspicion that defendant had violated section 545.060(a) of the Transportation Code. *Cf. State v. Tarvin*, 972 S.W.2d 910, 912 (Tex.App.—Waco 1998, pet. filed) (evidence supported trial court's finding that defendant did not violate section 545.060(a) of Transportation Code).

## CONCLUSION

We reverse the trial court's judgment of conviction and remand the cause to that court for further proceedings consistent with this opinion.