**TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant,**

v.

**Thomas Eugene BELL, Sr., Appellee.**

No. 04–99–00093–CV.

Court of Appeals of Texas, San Antonio.

Oct. 29, 1999.

Carla E. Eldred, Hearings Atty., Kevin M. Givens, Supervising Atty., ALR appeals, Texas Dept. of Public Safety, Austin, for Appellant.

Harold James Danford, Kerrville, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice.

## OPINION

PHIL HARDBERGER, Chief Justice.

The Texas Department of Public Safety ("DPS") appeals the trial court's order reversing the administrative decision authorizing the suspension of the driving privileges of Thomas Eugene Bell, Sr. ("Bell"). DPS presents two issues, asserting that the trial court erred in holding: (1) there was no reasonable suspicion to stop and no probable cause to arrest Bell; and (2) the administrative decision was not supported by substantial evidence in the record as a whole. We collectively address these issues and conclude that there was substantial evidence to support the administrative decision. We reverse the trial court's order and render judgment in accordance with the administrative decision.

### FACTUAL AND PROCEDURAL HISTORY

On July 3, 1998, Bell declined to give a specimen of his breath or blood after he was arrested for driving while intoxicated. Bell requested and received an administrative hearing to determine whether his driving privileges should be suspended or denied.

At the hearing, DPS Trooper Morales testified that he was traveling southbound on the inside lane of a four-lane highway when he encountered Bell traveling northbound on the inside lane. Morales stated that Bell came very close to crossing the double yellow line, which caused Morales to move over and attracted his attention.

Morales then turned and proceeded to follow Bell. Morales observed Bell cross the double yellow line with his left side tires. Morales also observed Bell weave from the inside lane to the outside lane several times without signaling for a lane change. At that point, Morales pulled Bell's vehicle over. Bell got out of the vehicle and walked to the back of his truck. Morales observed Bell place his hand on his truck for support. As Morales approached Bell, he observed that Bell's eyes were blood-shot and glassy, that Bell was off-balance or swaying, and that Bell had a strong odor of alcohol on his breath. Bell admitted that he had been drinking. Bell also told Morales that he could not perform the field sobriety tests. Morales proceeded to administer the horizontal gaze nystagmus test, which Bell failed. Morales also testified that Bell failed the alphabet recitation test and the finger-tip count test. Morales did not have Bell perform the standard balancing tests in deference to Bell's advanced age and back problems. Based on Morales's observations and these tests, Morales arrested Bell for driving while intoxicated.

Bell testified that this was the third occasion that Morales had stopped him for failing to stay in his lane. On the two prior occasions, Morales did not arrest him. Morales stated that he could not recall previously stopping Bell. Bell further testified that he did not remember crossing the yellow line, but he admitted that he had a tendency to crowd the center line while driving as a matter of habit. Bell stated that he did remember changing lanes and admitted that he did not likely signal. Bell further stated that Morales stopped him before he could complete the alphabet recitation test, and his eyes were red because of an eye condition he had. Finally, Bell admitted that he told Morales he had been drinking, but stated he only drank three beers in a three-and-a-half hour period.

## STANDARD OF REVIEW

The standard for the judicial review of a decision by an administrative law judge ("ALJ") under chapter 724 of the Texas Transportation Code is governed by section 2001.174 of the Administrative Procedures Act ("APA"). *Texas Dept. of Public Safety v. Monroe*, 983 S.W.2d 52 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Texas Dept. of Public Safety v. Valdez*, 956 S.W.2d 767, 769 (Tex.App.—San Antonio 1997, no writ). Section 2001.174(2)(E) of the APA requires a reviewing court to reverse an ALJ's decision if: (1) substantial rights of the appellant have been prejudiced; and (2) the ALJ's findings are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. TEX. TRANSP. CODE ANN. § 2001.174(2)(E) (Vernon Supp.1998); *see also Texas Dept. of Public Safety v. Cantu*, 944 S.W.2d 493, 495 (Tex.App.—Houston [14th Dist.] 1997, no writ). Under a substantial evidence review, the reviewing court cannot substitute its judgment for that of the ALJ on controverted issues of fact. *Railroad Comm'n of Texas v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex.1995). The issue for the reviewing court is not whether the ALJ reached the correct conclusion, but rather whether there is some reasonable basis in the record for the action taken by the ALJ. *Id.* Substantial evidence only requires a mere scintilla of evidence. *Id.* We review the trial court's judgment under a substantial evidence review *de novo*. *Valdez*, 956 S.W.2d at 769.

## DISCUSSION

■ On appeal to the trial court, Bell asserted that the evidence was insufficient to support the ALJ's finding that he failed to maintain a single lane of traffic. The trial court concluded that there was not substantial evidence on the failure to maintain a single marked lane because there was no evidence presented that the lane changes, if any, could not be made safely.

■ Section 545.060 of the Texas Transportation Code requires an operator on a roadway divided into two or more clearly marked lanes for traffic to: (1) drive as nearly as practical entirely within a single lane; and (2) not move from the lane unless that movement can be made safely. TEX. TRANSP. CODE ANN. § 545.060 (Vernon 1999). The trial court reversed the administrative decision on the basis that there was no evidence with regard to the second requirement for violating this statutory provision. However, the reasonable suspicion determination is based on the totality of the circumstances, and there is no requirement that a particular statute be violated in order to give rise to reasonable suspicion. *Gajewski v. State*, 944 S.W.2d 450, 452 (Tex.App.—Houston [14th Dist.] 1997, no pet.). In this case, the ALJ found that Bell failed to maintain a single lane of traffic, not that Bell violated section 545.060 of the Texas Transportation Code. Morales testified that Bell crossed the center line of the highway and wove between lanes on several occasions. Morales's testimony was more than a scintilla of evidence to support the ALJ's finding that Bell failed to maintain a single lane of traffic and was sufficient to give rise to a reasonable suspicion that Bell was driving while intoxicated or that some activity out of the ordinary was occurring, so as to justify the temporary stop of Bell's vehicle. *See id; see also Texas Dept. of Public Safety v. Seidule*, 991 S.W.2d 290, 293 (Tex.App.—Houston [1st Dist.] 1998, no pet.) (finding substantial evidence to support finding of reasonable suspicion based on officer's statement that driver of vehicle failed to maintain a single marked lane); *Texas Dept. of Public Safety v. Nordin*, 971 S.W.2d 90, 94 (Tex.App.—Houston [14th Dist.] 1998, no pet.) (holding ALJ correctly held that officer had reasonable suspicion to make stop based on observation that driver crossed over shoulder stripe and was weaving within his traveling lane).

Bell asserts that the decision in *Hernandez v. State*, 983 S.W.2d 867 (Tex.App.—Austin 1998, pet. ref'd), is on point and mandates the reversal of this case. However, in *Hernandez*, the officer only observed a single instance in which the driver crossed over the white line adjoining two lanes of traffic flowing the same direction. *Id.* at 868. In this case, Morales testified that Bell drove over the center lane into a lane of traffic flowing in the opposite direction and wove several times between two lanes of traffic flowing in the same direction. The Austin court itself has distinguished *Hernandez* where the facts show that the driver crossed over a yellow line into a lane designated for oncoming traffic. *See Texas Dept. of Public Safety v. Chang*, 994 S.W.2d 875, 876 & n. 2, 878 (Tex.App.—Austin 1999, no pet.). *Hernandez* is distinguishable from the instant case not only because Bell was observed crossing the center line but also because he was observed weaving between two lanes of traffic flowing in the same direction not one time but several times.

### CONCLUSION

Because the record contains substantial evidence to support the ALJ's finding that reasonable suspicion existed to stop Bell, the trial court erred in reversing the administrative decision. We reverse the trial court's order and render judgment upholding the administrative decision.

Concurring opinion by: TOM RICKHOFF, Justice.

Given this record and the presumption favoring the administrative law judge's factual finding, the order of the Kerr County Court of Law, the Honorable Spencer W. Brown, appears to be inexplicable. Thomas Eugene Bell, Sr., already suffering from extensive medical problems, admitted to drinking beer and then driving. The evidence demonstrated that Bell's pickup truck was moving between lanes, crossed the highway dividing lanes, and could have struck oncoming traffic. After pulling Bell over, Trooper Morales observed several

signs that Bell was intoxicated. Bell had a strong odor of alcohol on his breath, bloodshot eyes, slurred speech, and unsteady balance. He failed three field sobriety test. The evidence in the record is so conclusive, had Trooper Morales failed to arrest Bell for driving while intoxicated, he would have been irresponsible. *See Texas Dep't of Public Safety v. Walter*, 979 S.W.2d 22, 29 (Tex.App.-Houston [14th Dist.] 1998, no pet.).

Since the administrative law judge, Judge Beeler, is the exclusive trier of fact in a license revocation hearing, Judge Brown, even if he disagreed with the findings of fact, is precluded from substituting his own conclusions if a reasonable person could have found that the Department proved its case by a preponderance of the evidence. *Id* at 28–29. I find it difficult to see how a reasonable person could have come to any other conclusion. However, the following portion of our record is particularly enlightening:

> Mr. Danford: Well, it's part that you—I didn't know you hadn't read this. (Speaking about the record at the administrative hearing)
>
> Mr. Ray: Here you go. I haven't marked on this.
>
> (Hands to court)
>
> The Court: Well. I'd read it if I known it was there. [sic]
>
> . . . .
>
> The Court: Dad-gum it, I ought to stop and read it. It's 41 pages long.
>
> Mr. Danford: It goes real fast. It's a quick read, Judge.
>
> The Court: If—well, if you like, I can try to peruse it real quick. Do my best. I'd have it read. I apologize.
>
> . . . .
>
> (Reading)
>
> The Court: All right. I got the gist of what happened. Tell me about it. Let's go.
>
> Mr. Danford: Well, your Honor, I don't know if you have a copy of the actual administrative decision from the judge that we appealed.
>
> The Court: I don't have it.
>
> Mr. Danford: But I do have one of those. I'll let you—I'll let you look at that with the findings of fact in it.
>
> (Hands to Judge.)

It is apparent from our record, that the reviewing judge may not have had time to digest the record of the administrative hearing. As a former trial judge, I know we can just get too tired on Friday to read all that is put before us, but "dad-gum it," if the trial judge does not read the record, we will have to.