# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00180-CV

**Texas Department of Public Safety, Appellant**

**v.**

**Gary Christopher Rice, Appellee**

## FROM COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY
## NO. 8677-C, HONORABLE LINDA A. RODRIGUEZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Department of Public Safety appeals from the trial court's order reversing the administrative law judge's suspension of Gary Christopher Rice's driver's license. The Department contends that the trial court erred by substituting its judgment for that of the ALJ concerning the reasonable basis of the stop, by filing findings of fact and conclusions of law, and by reversing the ALJ's finding that the Department had proven the elements required for suspension. We reverse the trial court's order and reinstate the ALJ's ruling.

At the time of the incident that led to Rice's license suspension, Department trooper Freddy Duran—the only witness at the hearing before the ALJ—was parked at the intersection of

Hunter Road, a farm-to-market road, and McCarty Lane, a county road in Hays County. Hunter Road was under construction intended to expand the road to four lanes. The usable portion of Hunter changed from time to time during the construction process. At the intersection, barricades blocked the part of the road under construction. Duran was parked on the blockaded portion of the road. The usable part of Hunter was not striped, although the lanes were marked by small reflective flags spaced at intervals of ten to fifteen feet. The usable part of the road had no shoulder on either side. The stop sign was temporary and the turn fairly tight.

Traffic was light at 12:40 a.m. when Duran saw Rice make a wide right turn from McCarty Lane onto Hunter Road into the lane of oncoming traffic. Duran testified that Rice drove on the wrong side of the road for about fifteen feet before moving suddenly into the correct lane. Duran initiated a stop without observing any additional unusual driving. Rice, driving the only car visible on the road at the time, pulled over into the construction zone. Duran testified that he stopped Rice for the traffic infraction and not because he suspected DWI.

Duran said that Rice exhibited some lack of motor skills and seemed nervous. When Duran informed him of the reason for the stop, Rice slurred his words while saying "construction zone." Rice fumbled with his wallet for his driver's license, and seemed uncertain where his insurance card was. Duran testified to smelling a strong odor of alcohol or an alcoholic beverage from inside the car. Duran said he asked Rice to get out of the car. Rice got out without using the vehicle for support or stumbling. In response to a question of how much he had to drink, Rice responded that he was headed home. Asked again, Rice said he had drunk two or three beers. Duran said that Rice had glassy, watery, bloodshot eyes, and slurred speech. Duran also testified that a

2

strong smell of alcohol emanated from Rice's person detectable in the open air, although Duran could not tell if the odor came from Rice's breath or his body generally.

Duran conducted field sobriety tests on Rice. The horizontal gaze nystagmus test revealed some indicators of intoxication. Duran noted that Rice claimed he had a pre-existing eye injury. During the walk-and-turn, Duran observed Rice's lack of balance before and during the test, detecting four clues of intoxication out of a possible eight. Duran said his report indicated that, during the one-leg stand, Rice swayed while balancing, hopped, and put his foot down. Based on these tests, Duran determined that Rice was not in full possession of his mental and physical faculties due to alcohol intoxication.

Duran informed Rice that he was under arrest for driving while intoxicated. Duran requested a breath sample, but Rice declined to provide one. The Department suspended Rice's driver's license. Rice requested a hearing before an ALJ on the suspension.

The ALJ found that Duran had reasonable suspicion to stop Rice because Rice turned into the lane for oncoming traffic. The ALJ found that probable cause to arrest Rice existed because of the indicia of intoxication Duran observed after the stop. The ALJ also found that Duran properly asked Rice to provide a specimen of blood or breath, but Rice refused. The ALJ concluded that the Department proved the elements required to support a license suspension.

Rice sought judicial review of the ALJ's ruling. After hearing argument, the trial court reversed the ALJ's ruling and ordered the Department to rescind any suspension and obliterate all references to any suspension. The trial court filed findings of fact and conclusions of law. The court found that Rice's driving did not create a traffic hazard or violate the transportation code

3

because his driving was not dangerous or unsafe. The court further found that, during his right turn, he remained as close as practicable to the right of the roadway as the circumstances permitted. Finally, the court found that there was no reasonable suspicion or probable cause to justify a detention based on DWI.

The Department appeals, contending that the trial court erred in reversing the ALJ's order concluding that the Department proved the elements of its case. The Department argues that the trial court improperly substituted its judgment for that of the ALJ concerning the reasonableness of the stop and by filing findings of fact and conclusions of law.

At the administrative hearing, the Department had the burden to prove each element by a preponderance of the evidence. *Texas Dep't of Pub. Safety v. Monroe*, 983 S.W.2d 52, 55 (Tex. App.—Houston [14th Dist.] 1998, no pet.). A person arrested for DWI is deemed by law to have consented to the taking of a breath or blood specimen to check for intoxication. *See* Tex. Transp. Code Ann.§ 724.011 (West 1999). A specimen may be taken at the request of a peace officer who has reasonable grounds to believe that the person was driving while intoxicated[1] unless the person refuses,[2] in which case, the Department may suspend the person's license.[3] If the person requests a hearing, the suspension is stayed until an administrative law judge from the State Office of Administrative Hearings holds a hearing on the suspension. *Id*. § 724.041. The statute lists the issues relevant at the hearing:

---

[1] Tex. Transp. Code Ann.§ 724.012 (West Supp. 2005).

[2] Tex. Transp. Code Ann.§ 724.013 (West 1999).

[3] Tex. Transp. Code Ann. § 724.035 (West Supp. 2005).

The issues at a hearing under this subchapter are whether:

(1) reasonable suspicion or probable cause existed to stop or arrest the person;

(2) probable cause existed to believe that the person was: (A) operating a motor vehicle in a public place while intoxicated; . . .

(3) the person was placed under arrest by the officer and was requested to submit to the taking of a specimen; and

(4) the person refused to submit to the taking of a specimen on request of the officer.

*Id*. § 724.042.

Courts review administrative license decisions under the substantial evidence standard. *See* Tex. Transp. Code Ann. § 524.041 (West 1999); Tex. Gov't Code Ann. § 2001.174 (West 2000). A court applying the substantial evidence standard of review may not substitute its judgment for that of the agency. Tex. Gov't Code Ann. § 2001.174; *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999). The issue for the reviewing court is not whether the agency decision was correct, but whether the record demonstrates some reasonable basis for the agency's action. *Mireles*, 9 S.W.3d at 131. Courts must affirm administrative findings in contested cases if there is more than a scintilla of evidence to support them. *Id*.; *Railroad Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792-93 (Tex. 1995). An administrative decision may be upheld even if the evidence preponderates against it. *See Torch*, 912 S.W.2d at 793. A reviewing court applying the substantial evidence standard "shall reverse . . . if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are

5

. . . not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole . . . ." Tex. Gov't Code Ann. § 2001.174(2)(E).

We review the trial court's judgment under a substantial evidence review *de novo* standard because whether an agency's decision is supported by substantial evidence is a question of law. *Tex. Dep't Public Safety v. Jackson*, 76 3d 103, 106 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

We first examine whether there was at least reasonable suspicion that Rice violated the law. The trial court's findings of fact and conclusions of law indicate that the court reversed the ALJ because of the lack of reasonable suspicion to support the initial stop. The court of criminal appeals has articulated the standard of review for finding reasonable suspicion:

> "Reasonable suspicion" exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity. This standard is an objective one: there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant. The reasonable suspicion determination is made by considering the totality of the circumstances. In conducting this totality of the circumstances determination, we use a bifurcated standard of review: (1) giving almost total deference to a trial court's determination of historical facts and application of law to fact questions that turn on credibility and demeanor, and (2) reviewing de novo application of law to fact questions that do not turn upon credibility and demeanor.

*Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (footnotes omitted). When a traffic violation is committed within an officer's view, the officer may lawfully stop and detain the person for the traffic violation. *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000).

6

If reasonable suspicion for the stop existed in this case, it must concern an offense other than DWI. Duran testified that he did not stop Rice for intoxication and the trial court found that there was no basis before the stop for reasonable suspicion that Rice was intoxicated. There is no challenge to that conclusion. To reverse the trial court's judgment, the Department must show the record contains substantial evidence of some other basis for the stop.

The critical dispute is whether Rice's wide right turn and "fifteen feet" of travel in the wrong lane provided substantial evidence to support the ALJ's determination that Rice's turn gave rise to at least a reasonable suspicion that he violated the law. Duran stated in the synopsis section of his sworn report that he stopped Rice for failure to use a single marked lane. In the section detailing the probable cause for the stop, Duran wrote that Rice entered the oncoming lane of traffic when turning right and traveled about fifteen feet before pulling back into the correct lane. Three traffic rules are implicated by this action. Tex. Transp. Code Ann. § 545.060 (West 1999) (failure to maintain a single marked lane); *id*. § 545.051 (driving on the right side of the road); § 545.101 (staying as close as practicable to right side of road during right turn). Section 545.060 has been interpreted to require a showing that drifting from the single lane created a safety hazard before a violation occurs. *Id*. § 545.060; *see Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App.—Austin 1998, pet. ref'd). But that statute expressly contains language pertaining to safety, whereas the right-turn statute does not. *Compare* Tex. Transp. Code Ann. § 545.060(a) *with id*. § 545.101. Section 545.101 provides: "To make a right turn at an intersection, an operator shall make both the approach and the turn *as closely as practicable to the right-hand curb or edge of the roadway*." *Id*. § 545.101 (emphasis added).

We conclude that the record contains substantial evidence to support the ALJ's finding of reasonable suspicion that Rice violated the right-turn statute. Duran testified that Rice did not appear to be having difficulty making the turn, but simply turned into the wrong lane. Duran opined that a driver would have to make a tight turn to remain in the lane, but did not testify as to any condition that made it impracticable to avoid crossing the center lane in making this right turn. He testified that each lane was wide enough to accommodate an eighteen-wheel truck—Rice was driving a small pickup truck. Duran agreed that the temporary stop sign was close to the intersection, but did not indicate that it or any other road conditions or markers made staying in the right lane impracticable. There was no contrary evidence. In argument at the hearing, Rice asserted that the incursion into the oncoming lane was brief and that conditions at the intersection made it impracticable to stay close enough to the side of the road to avoid crossing into the oncoming lane during the turn. We conclude that this record contains at least a scintilla of evidence that Rice violated the requirement that drivers stay as close to the right side of the road as practicable when turning right. *Id*. § 545.101.

There is thus substantial evidence of the four elements required to support a license suspension. *See id*. § 724.042. There was substantial evidence supporting reasonable suspicion of a violation of a traffic offense to support the initial stop. There is no dispute on appeal that substantial evidence supported the conclusion that Duran observed behaviors and conditions that provided probable cause to arrest Rice for DWI. Similarly, there is no dispute that Duran properly requested a breath sample and that Rice refused to provide a sample.

The trial court erred in concluding that the ALJ's decision to suspend Rice's license was not supported by substantial evidence. We reverse the trial court's order and render judgment reinstating the ALJ's order authorizing the Department's suspension of Rice's license.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Puryear and Waldrop

Reversed and Rendered

Filed: February 10, 2006