# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-14-00048-CR
---

**The State of Texas, Appellant**

**v.**

**Jess Lee Garcia, Appellee**

---
### FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
### NO. C-1-CR-12-221124, HONORABLE BRANDY MUELLER, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

The trial court granted appellee Jess Lee Garcia's motion to suppress evidence gathered after an investigative detention arising from a passerby's report of "a possible intoxicated driver." The State contends that the trial court erred by granting the motion to suppress because the detention did not violate the federal or state constitutions or the Texas Code of Criminal Procedure. We will affirm the order granting the motion to suppress.

## BACKGROUND

The police officer who detained appellee was the sole witness at the hearing on the motion to suppress. He testified that he was on patrol at about 2:40 a.m. on December 20, 2012, when he was notified that a 911 caller who identified himself as "Eric" had reported "a possible intoxicated driver in line at the to-go line" for a nearby fast-food restaurant. The officer testified that "the caller stated to the 911 call taker that they had seen the vehicle swerving on First Street, and the caller gave a description of a silver two-door Acura with a Hispanic male driver with black hair."

The officer, who was across the street from the restaurant, saw one car matching the description and, when he pulled up behind the car, saw a driver matching the description given. The car was second in line in the drive-through lane with the marked police car behind him. The officer testified that bars close at 2 a.m., that this location was near a bar district, and that, based on his twenty-seven years with the Austin police department, he knew that intoxicated drivers tended to swerve.

The officer did not activate his patrol car's overhead lights. He got out of his car, walked up to the Acura, and asked the driver, identified as appellee, how he was doing. The State conceded at the suppression hearing that, under those circumstances, the temporary detention was complete when appellee's car was boxed in and the officer approached the driver, so we will not discuss testimony about events beyond that point.

On cross-examination, the officer testified that he did not know how long the 911 caller followed the car he reported as swerving, did not know how many times the caller saw the driver swerve, and did not know whether any other vehicles were placed in danger by the reported swerving. The officer conceded that swerving is not a criminal behavior. He testified that he was in uniform, may have used his flashlight when he approached the vehicle, and likely identified himself as a police officer. He said he did not see appellee driving.

The trial court filed findings of fact and conclusions of law. It noted that the State conceded that appellee was detained when the officer pulled into the drive-through line behind him. The trial court found that the detention was based entirely on the 911 caller's report; that the officer did not know of any criminal act, traffic violation, or other behavior by the appellee; and that neither the officer, the officer's colleagues, nor the restaurant employees had observed appellee's driving. The trial court also found that there was no evidence to support the credibility of the caller or

the tip because no officer spoke to the 911 caller or inquired regarding the caller's information. The 911 caller did not testify.

The trial court concluded that appellee was detained, that the contact between the officer and appellee was not consensual, that the detention was based exclusively on the uncorroborated information relayed from the 911 caller, and that there was no indicia of the reliability of the caller. The trial court concluded that the officer was credible, but that the swerving the 911 caller reported "was generalized and did not constitute a criminal act." The trial court concluded ultimately that the officer "would have been justified in initiating a consensual encounter to determine if there was additional information to corroborate the caller's tip, but the caller's report standing alone, was insufficient to form the requisite reasonable suspicion to detain" appellee.

**STANDARD OF REVIEW**

The court of criminal appeals summarized the standard of review in cases like this as follows:

> We review a ruling on a motion to suppress evidence under a bifurcated standard. The trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo. Whether the facts known to the officer at the time of the detention amount to reasonable suspicion is a mixed question of fact and law that is reviewed de novo on appeal. The parties agree that the facts are undisputed, so our review in this case is de novo.

> The Fourth Amendment to the United States Constitution permits a warrantless detention of a person, short of a full-blown custodial arrest, if the detention is justified by reasonable suspicion. "[A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and investigate further." [*Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185 (2004).] Reasonable suspicion to detain a person exists if an officer has specific, articulable facts that, combined with rational

3

inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime. "Although an officer's reliance on a mere 'hunch' is insufficient to justify an investigatory stop, the likelihood of criminal activity need not rise to the level required for probable cause." [*United States v. Arvizu*, 534 U.S. 266, 274 (2002).] The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent. A reasonable-suspicion determination requires looking at the totality of the circumstances and reasonable suspicion may exist even if those circumstances standing alone may be just as consistent with innocent activity as with criminal activity.

*State v. Kerwick,* 393 S.W.3d 270, 273 (Tex. Crim. App. 2013) (citations, internal headings, and footnotes omitted generally, but citation added when cited case was quoted directly).

## DISCUSSION

On appeal, the State argues that the 911 caller's report is presumed reliable and that it provided sufficient information to justify a reasonable suspicion that appellee was driving while intoxicated. We conclude, however, that even assuming that the caller was reliable and that the officer knew all of the information the caller supplied to the 911 operator, the information provided was inadequate to trigger reasonable suspicion of illegal activity to justify a temporary detention of appellee.

The circumstances surrounding appellee's driving—early morning near a bar district—do not describe illegal conduct and are not alone sufficient to provide reasonable suspicion of wrongdoing. Similarly, the caller's suspicion that appellee was possibly intoxicated is not, without more, sufficient to provide reasonable suspicion for the temporary detention because there is no evidence of what facts (other than the "swerving" discussed below) that conclusion was based

4

on and no evidence of what experience the caller brought to bear to interpret those facts. This is unlike the report concerning the driver in *Derichsweiler v. State*, who repeatedly drove up beside vehicles and stared, causing the occupants to feel threatened even though no overt threat was made. *See* 348 S.W.3d 906, 915 (Tex. Crim. App. 2011); *see also Brother v. State*, 166 S.W.3d 255, 256 (Tex. Crim. App. 2005) (caller reported driver speeding, tailgating, and weaving across several lanes of traffic); *Hime v. State*, 998 S.W.2d 893, 894-95 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (caller reported driver swerving toward cars as they tried to pass). In each of those cases, the caller provided details of unusual, illegal, or dangerous behaviors supporting the conclusion that the driver they saw was intoxicated.

The evidence regarding appellee's driving is the caller's non-specific account that appellee was "swerving." But "swerving" does not necessarily indicate illegal, dangerous, or intoxicated driving. *See Hernandez v. State*, 983 S.W.2d 867, 870 (Tex. App.—Austin 1998, pet. ref'd). In *Hernandez*, this Court reversed a DWI conviction finding that the trial court should have granted a motion to suppress evidence obtained in a warrantless traffic stop. *Id*. at 872. A police officer observed a vehicle swerve slowly across a traffic lane line and back. *Id.* at 869. He testified that the driver did not use a turn indicator and that the swerve did not endanger any other vehicles or persons because few were around in the early-morning hours. *Id.* at 868-69. This case is somewhat different in that the officer in *Hernandez* made a first-hand observation and testified that he stopped the driver out of concern for his well-being rather than for any suspicion of intoxication. *See id*. at 870. But the *Hernandez* court opined that the record lacked sufficient indicia of intoxication to justify a stop on that basis. *Id.* In this case, the 911 caller's description of the driving is the only evidence of appellee's driving. It was less specific and provided no basis like the

*Hernandez* police officer's experience on which to attach weight to the caller's allegation of "possible" intoxication.

While a 911 caller's observations can be sufficient to support reasonable suspicion of intoxication, some detailed observations are needed. *See Navarette v. California*, 572 U.S. ___, ___, 134 S. Ct. 1683, 1689 (2014) (caller described being run off the road by vehicle). The Supreme Court held that the caller had provided specific evidence of dangerous driving that provided sufficient indicia of reliability to justify a temporary detention of the pickup and driver. *Id.* The reported "swerving" in the case before us did not reach the level of danger described in *Navarette*, nor did it reach the level of examples cited therein of reports that provide sufficient indicia of drunk driving—i.e., weaving all over the roadway, crossing the center line and almost causing several head-on collisions, driving all over the road and weaving back and forth, and driving in the median. *See id.* at 1690-91. The Supreme Court found persuasive the fact that the 911 caller in *Navarette* reported

> more than a minor traffic infraction and more than a conclusory allegation of drunk or reckless driving. Instead, she alleged a specific and dangerous result of the driver's conduct: running another car off the highway. That conduct bears too great a resemblance to paradigmatic manifestations of drunk driving to be dismissed as an isolated example of recklessness. Running another vehicle off the road suggests lane-positioning problems, decreased vigilance, impaired judgment, or some combination of those recognized drunk driving cues.

*Id.* at 1691. Here, by contrast, the 911 caller provided only a non-specific allegation of "swerving"—and no indication that the swerving violated lane integrity or endangered other drivers—and a conclusory allegation of "possible intoxication."

6

The totality of these circumstances in evidence did not support the detention. This is a close case, and these type of cases are highly fact-dependent. We are not deciding that the caller or the officer were not credible, only that the facts reported were insufficient to support a reasonable suspicion of intoxication. We conclude that the 911 caller's report of swerving, without more description or evidence of its range, persistence, or danger, combined with a conclusory allegation of "possible" intoxication, without more facts underlying that conclusion (either factual or experiential), did not justify the temporary detention of appellee. *See Kerwick*, 393 S.W.3d at 273. The facts in evidence here fall just short of sufficient evidence to have provided reasonable suspicion to justify the temporary detention of Garcia. We overrule the State's issue on appeal.

## CONCLUSION

We affirm the grant of the motion to suppress evidence obtained pursuant to the temporary detention of appellee.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed: August 28, 2014

Do Not Publish

7