**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00261-CR**
_____

**ROBYN KAYE TANTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 1A District Court**
**Jasper County, Texas**
**Trial Cause No. 12955JD**

**MEMORANDUM OPINION**

Appellant Robyn Kaye Tanton was charged with possession of a controlled substance, and she filed a motion to suppress. After the trial court denied Tanton's motion to suppress, Tanton pleaded guilty pursuant to a plea bargain agreement, and the trial judge deferred adjudication of Tanton's guilt, placed Tanton on community supervision for three years, and assessed a fine of $1000. In her sole appellate issue, Tanton argues that the trooper who stopped the vehicle in which she was a passenger

lacked reasonable suspicion and had no objective justifiable basis for detaining her. We affirm the trial court's order denying Tanton's motion to suppress.

BACKGROUND

In her motion to suppress, Tanton asked the trial court to suppress evidence seized and statements made because of an allegedly illegal stop, detention, or arrest. The items Tanton sought to suppress included (1) methamphetamine, (2) any other items seized as a result of the stop, and (3) any written or oral statements Tanton made during or after the stop. Tanton asserted in her motion that she was stopped and detained without a warrant and without probable cause or reasonable suspicion. The trial court conducted a hearing on Tanton's motion to suppress.

At the hearing, Trooper Kevin Brewster of the Texas Department of Public Safety Highway Patrol Division testified that while he was on routine patrol, he saw a northbound vehicle on F.M. 105 while he was traveling south. Brewster noticed that the female passenger in the vehicle, who he later learned was Tanton, was not wearing her safety belt, so he turned his patrol car around and proceeded after the vehicle. The vehicle turned into a convenience store, and Brewster activated his vehicle's emergency lights. Brewster explained that the driver and Tanton got out of the vehicle, and the driver tried to avoid looking at Brewster and "proceeded to try to go into the store." Brewster explained that Tanton initially did not acknowledge

2

him, but she eventually turned around, and he "motioned for them to come back." Brewster identified himself to Tanton as a highway patrolman and told her that he had stopped them because she was not wearing her seat belt. According to Brewster, the driver was nervous, his hands were trembling, and he was carrying an invalid Louisiana identification. The driver told Brewster that he was nervous because he was on probation. Brewster testified that Tanton called him by name when he approached her, and after Tanton showed Brewster her identification, he recognized Tanton as someone he had stopped before.

Brewster testified that the driver gave him consent to search the vehicle, and he "pat searched the driver . . . [to] make sure he didn't have any weapons on him." Brewster testified that officer safety was the purpose of the pat down, and he explained, "if you're going to be in the vehicle you're going to have your head down looking under seats, in compartments, things like that. If a person has a weapon, you would want to know before you did that." Brewster did not pat down Tanton in the same manner because he could tell that she did not have any weapons in her jeans, but he explained that Tanton was wearing a jacket with zipped-up pockets. Brewster instructed Tanton to unzip her right pocket, and he saw that it was empty, but when he asked her to unzip the left pocket, she "barely opened it up, and zipped it up real quick." Brewster explained that he could not ascertain whether Tanton had a weapon

3

in her left pocket, so he asked her again to unzip it and open it wide. When Tanton complied, Brewster testified, "I observed a small bag of a white crystal substance that I believed to be methamphetamine. Then I went into the pocket and pulled out three bags of it." Brewster placed Tanton under arrest.

During cross-examination, Brewster testified that he was accompanied that day by another trooper, who was assigned to Tyler County and was undergoing on-the-job training with Brewster because Tyler County was "short on people." Brewster explained that said trooper has since resigned. Brewster testified that the defendant opening her zipper is not visible in the video. When asked whether there was other corroborating evidence that Brewster did not open the zippers on Tanton's jacket himself, he stated that he did not, and he testified, "my word is the truth." Brewster explained that he did not issue a citation to Tanton for not wearing a seat belt because she was instead arrested for possession of methamphetamine. Brewster testified that he asked for consent to search the vehicle because he was suspicious "from the very beginning" once the vehicle pulled into the store. Brewster testified that his suspicion was based upon the driver avoiding looking at Brewster and showing signs of nervousness. When asked whether there was any indication that Tanton was armed, Brewster again explained that because he had gotten verbal

4

consent to search the vehicle, officer safety was a concern. The video of the traffic stop was admitted into evidence as defendant's exhibit one.

## TANTON'S ISSUE

In her sole appellate issue, Tanton argues that Brewster lacked reasonable suspicion that she was armed and dangerous and was committing, or was about to commit a criminal offense, and that Brewster therefore had no objective justifiable basis for detaining her. The State asserts that (1) Brewster had probable cause to make the initial stop because he observed that Tanton was not wearing her safety belt; (2) the continued detention and investigation of Tanton was justified because Brewster developed reasonable suspicion, based upon the totality of the circumstances, that Tanton had committed, was committing, or was about to commit a criminal act; and (3) the pat down of Tanton for weapons was justified because Brewster had reasonable suspicion that Tanton was armed and dangerous.

We review a trial court's ruling on a motion to suppress using a bifurcated standard of review. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). We give almost total deference to the trial court's determination of historical facts and mixed questions of law and fact that rely on credibility determinations if they are supported by the record. *Id*.; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). However, we review de novo questions of law and mixed questions of

5

law and fact that do not rely on credibility determinations. *Kerwick*, 393 S.W.3d at 273. When, as here, a trial court does not make written findings explaining the factual basis for its decision, we imply findings of fact that support the trial court's ruling if the evidence supports those implied findings. *Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011). At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). A trial court may choose to believe or to disbelieve any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We must uphold the trial court's ruling on a motion to suppress if the ruling was supported by the record and was correct under any theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

A police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of probable cause. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997). We must examine the reasonableness of a temporary detention in light of the totality of the circumstances. *See Woods*, 956 S.W.2d at 38. In determining whether an officer's suspicion was reasonable, we determine whether

6

the facts available to the officer when he detained the suspect would cause a person of reasonable caution to believe that the action taken was appropriate. *See Terry*, 392 U.S. at 21-22; *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref'd). "The purpose of a *Terry* frisk is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Wade v. State*, 422 S.W.3d 661, 669 (Tex. Crim. App. 2013). However, "police may not escalate a consensual encounter into a protective frisk without reasonable suspicion that the person (1) has committed, is committing, or is about to commit a criminal offense *and* (2) is armed and dangerous." *Id.* (citing *Adams v. Williams*, 407 U.S. 143, 146 (1972) and *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000)).

The trial judge heard Brewster testify that he decided to stop the vehicle because he observed that Tanton was not wearing her safety belt. In addition, the trial judge heard Brewster testify that although he had activated his vehicle's emergency lights when he pulled into the parking lot behind the vehicle, the driver and Tanton did not initially acknowledge Brewster. Brewster also testified that the driver was nervous, and that he recognized Tanton as someone he had stopped before. Viewing the evidence in the light most favorable to the trial court's ruling and giving deference to the trial court's role as the exclusive judge of the witness's credibility, we conclude that the trial judge did not err by concluding that Brewster

7

had a reasonable suspicion that Tanton was armed and dangerous and had committed, was committing, or was about to commit a criminal offense. *See Terry*, 392 U.S. at 21-22, 30; *Wade*, 422 S.W.3d at 669; *Woods*, 956 S.W.2d at 35. We therefore further conclude that the trial court did not err by denying Tanton's motion to suppress. Accordingly, we overrule Tanton's sole issue and affirm the trial court's order denying Tanton's motion to suppress.[1] *See Kerwick*, 393 S.W.3d at 273; *Guzman*, 955 S.W.2d at 89; *see also Meekins*, 340 S.W.3d at 460.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on September 4, 2018
Opinion Delivered November 7, 2018
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[1]Because we affirm the trial court's order denying Tanton's motion to suppress, the trial court's deferred adjudication order likewise remains in place.

8