

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-417-CV

TEXAS DEPARTMENT OF                  APPELLANT
PUBLIC SAFETY

V.

JENNIFER N. RILEY                         APPELLEE

------------

## FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Texas Department of Public Safety (the Department) appeals

from the trial court's order setting aside an administrative order that suspended

Appellee Jennifer N. Riley's driver's license and that ordered the Department to

restore Riley's driving privileges. In two issues, the Department argues that the

---

[1] *See* TEX. R. APP. P. 47.4.

trial court erred by reversing the administrative law judge's finding that reasonable suspicion existed for the officer to stop Riley. Because we hold that the officer had reasonable suspicion to stop Riley, we will reverse and render.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On February 3, 2007, at 1:52 a.m., Officer J. Chase with the Northlake Police Department stopped Riley for allegedly traveling onto the shoulder three times without signaling and thereafter arrested Riley for driving while intoxicated after she failed several field sobriety tests. Riley was given the statutory warnings explaining that her driver's license would be suspended for not less than ninety days if she gave a specimen of her breath and/or blood that showed that she had an alcohol concentration of 0.08 or more. Riley gave a breath specimen that exceeded the legal limit, and the Department suspended her driver's license. Riley thereafter requested a hearing under Texas Transportation Code chapter 524.

On July 2, 2007, the administrative driver's license suspension hearing was held by phone. The Department admitted into evidence six exhibits and rested. Riley did not object to any of the Department's exhibits. One of the exhibits admitted by the Department was the "Northlake Police Department DWI Case Report." Officer J. Chase had completed the report, noting in it that what initially caused him to notice Riley's vehicle was that she "traveled from

2

the right lane onto the shoulder three times without signaling" while heading northbound on IH-35W.  The report indicated under the "Conditions" section that it was "dark—not lighted" and that the road was a blacktop that was straight and level and that was marked for traffic lanes.  Officer Chase used a radar to clock Riley at forty-eight miles per hour in an area with a posted speed limit of sixty-five miles per hour.

Riley testified by phone as follows at the hearing:

Q      Ms. Riley, the officer states in his report that you traveled from the right – you were traveling in the right lane.  That's correct?

A      I was in the right-hand lane, yes.

Q      And he says that you went over onto the right shoulder three times.  Is that true?

A      That's incorrect – not true.

Q      So according to your recollection – and you've looked at the videotape.  Right?

A      Yes, sir.

Q      And so you can say without equivocation that's not a true statement and that you did not do that.

A      I did not do that, sir.

Q      Now, he says that you were traveling at 48 miles per hour in a 65-mile-per-hour zone.  Were you traveling at that speed on a regular basis or were there circumstances that might have

caused him to say that? Would you clarify that for the Court?

A      Yes, sir. I slowed down. The highway is not lighted at all, and I slowed down to see the sign. And that is when he must have said I was going slower than I was. Yes.

The Department asked one question on cross-examination regarding whether Riley was intoxicated. Neither side introduced the videotape of the stop into evidence. The administrative law judge (ALJ) thereafter found that Officer Chase had reasonable suspicion to stop or probable cause to arrest Riley and that Riley was operating a motor vehicle in a public place with an alcohol concentration of 0.08 grams or greater of alcohol per 210 liters of breath. The ALJ thus authorized the Department to suspend Riley's driving privileges for ninety days.

Riley appealed the Department's suspension of her license to the county court at law. In her brief supporting her appeal in the county court at law, she argued that the ALJ did not clearly state why he believed that the Department had proved that there was reasonable suspicion to stop her for slowing to look at a road sign or crossing the right line three times over an unspecified distance.

At the hearing in the county court at law, Riley's attorney argued that the ALJ had failed to reconcile the apparent conflict in the evidence—that the officer's report showed that Riley traveled onto the shoulder three times and

4

that she had testified at the ALJ hearing that she had not crossed over to the shoulder three times. Riley's attorney emphasized that there was no evidence in this case of any additional factors because the officer's report did not mention suspecting intoxication, impeding busy traffic, or creating an unsafe condition. Additionally, Riley's attorney argued that weaving "alone is not sufficient reasonable suspicion of a crime." The Department argued in the county court at law that Riley's slow speed and traveling at 2:00 a.m. coupled with crossing onto the shoulder three times without signaling constitutes "sufficient articulable facts . . . from which the officer could infer that criminal activity might be afoot or that at the very least that he needs to check on the well-being of this particular driver." Neither side specifically argued whether there was a violation of transportation code section 545.058, dealing with driving on an improved shoulder.[2]

---

[2] The only discussion about driving on the shoulder was limited to the following:

> THE COURT: Was this on the shoulder that she was – was at least the statement made that she wasn't moving to the left, which would indicate into another lane. She was moving to the right. It's either another lane, or it's a shoulder.

> [DEPARTMENT'S COUNSEL]: I believe it was the fog line, so I think she was moving onto the shoulder.

> THE COURT: (Overlapping) Okay. Shoulder.

After taking the matter under advisement, the county court at law found that there was no evidence in the record of the proceedings (1) that indicated that weaving, if it occurred, was unsafe; (2) that traveling forty-eight miles per hour in a sixty-five mile-per-hour zone is a violation of any code or statute; and (3) that the vehicle was stopped pursuant to the community watchdog function. Thus, the county court at law set aside the ALJ's decision and ordered the Department to restore Riley's driving privileges. This appeal by the Department followed.

### III. DRIVER'S LICENSE SUSPENSION PROCEDURES

Chapter 524 of the Texas Transportation Code contains provisions for the Department to suspend the driver's license of certain drivers when a blood or breath specimen taken from the driver shows an alcohol concentration of a level specified by section 49.01(2)(B) of the Texas Penal Code. TEX. TRANSP. CODE ANN. § 524.011 (Vernon 2007). Following notice of the suspension to the driver, the driver may request a hearing before an ALJ employed by the State Office of Administrative Hearings. *Id*. §§ 524.013, 524.031, 524.033.

There are two issues that the Department is required to prove by a preponderance of the evidence at the administrative hearing: (1) whether the person had an alcohol concentration of a level specified by section 49.01(2)(B) of the penal code while operating a motor vehicle in a public place and (2)

6

whether reasonable suspicion to stop or probable cause to arrest the person existed. *See id*. § 524.035(a). The statutes further provide that if the ALJ finds in the affirmative on each of those issues, the suspension is sustained. *See id*. § 524.035(b).

The driver may appeal an adverse decision of the ALJ to the county court at law of the county in which the driver was arrested, or to the county court in the absence of a county court at law. *See id*. § 524.041(a) — (b). Review on appeal to the county court at law is on the record certified by the State Office of Administrative Hearings with no additional testimony, unless upon request of a party the trial judge orders that an ALJ take such additional testimony because it finds that the additional evidence is material and that there were good reasons for the failure to present the testimony in the original proceeding before the ALJ. *See id*. § 524.043.

A review in the county court at law or county court of an administrative license suspension is conducted under the substantial evidence standard of review. *See Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999). Under this standard, the reviewing court cannot replace the ALJ's judgment with its own. *See id.*; *R.R. Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995). If the ALJ's decision is supported by more than a scintilla of evidence, that decision must be upheld. *See Torch Operating*

7

*Co.*, 912 S.W.2d at 792–93. However, a trial court may reverse an ALJ's determination if a substantial right of the appellant has been prejudiced because the ALJ's findings, inferences, conclusions, or decisions are not reasonably supported by substantial evidence considering the record as a whole. *See* TEX. GOV'T CODE ANN. § 2001.174(2)(E) (Vernon 2000).

## IV. STANDARD OF REVIEW

The court of appeals reviews the trial court's substantial evidence review de novo. *Tex. Dep't of Pub. Safety v. Valdez*, 956 S.W.2d 767, 769 (Tex. App.—San Antonio 1997, no pet.). The issue for the reviewing court is not whether the ALJ's decision was correct but only whether the record demonstrates some reasonable basis for the ALJ's decision. *See Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 162 (Tex. App.—Dallas 2001, no pet.) (citing *Mireles*, 9 S.W.3d at 131). Courts must affirm administrative findings in contested cases if there is more than a scintilla of evidence to support them, even if the findings are against the preponderance of the evidence. *See id.* If the evidence is conflicting, the court must defer to the ALJ's factual findings. *See Brown v. Tex. Dep't of Ins.*, 34 S.W.3d 683, 689 (Tex. App.—Austin 2000, no pet.).

## V. REASONABLE SUSPICION TO STOP RILEY

8

The Department argues in its first issue that the county court at law erred by reversing the ALJ's finding that the officer had reasonable suspicion to stop Riley. Specifically, the Department argued at oral argument that the "reasonable suspicion in this case was driving on the shoulder."[3] Texas Transportation Code section 545.058(a) provides that "[a]n operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only" under seven listed conditions, including "to decelerate before making a right turn." TEX. TRANSP. CODE ANN. § 545.058(a)(3) (Vernon 1999). Riley contends that Officer Chase did not possess reasonable suspicion to stop her because no evidence exists of an "improved shoulder" or of a "fog line" as required by Texas Transportation Code section 545.058(a).

Although in analyzing reasonable suspicion Riley would like for us to hone in on whether the Department put on evidence of a fog line or of an improved shoulder, that is not the burden that the Department was required to meet. A

---

[3] When asked to clarify the reasonable suspicion argument, counsel for the Department stated, "We're arguing reasonable suspicion that she violated the statute" and later specified that the statute they were relying on was Texas Transportation Code section 545.058. Thus, this case is distinguishable from those involving reasonable suspicion based on a violation of section 545.060. *See* TEX. TRANSP. CODE ANN. § 545.060(a) (Vernon 1999) (permitting movement from or between lanes when it can be done safely).

police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that the person detained actually is, has been, or soon will be engaged in criminal activity. *See Fisher*, 56 S.W.3d at 163 (citing *Tex. Dep't of Pub. Safety v. Chang*, 994 S.W.2d 875, 877 (Tex. App.—Austin 1999, no pet.)). The burden on the State is to demonstrate the reasonableness of the stop. *See id.* If an officer has a reasonable basis for suspecting a person has committed a traffic offense, the officer may legally initiate a traffic stop. *Id*. The State is not required to show a traffic offense was actually committed or to prove every element of a specific traffic offense, but only that the officer reasonably believed a violation was in progress. *Id*.; *see also Fisher*, 56 S.W.3d at 163; *Martinez v. State*, 29 S.W.3d 609, 611–12 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd); *Tex. Dep't of Pub. Safety v. Bell*, 11 S.W.3d 282, 284 (Tex. App.—San Antonio 1999, no pet.); *Chang*, 994 S.W.2d at 877; *Gajewski v. State*, 944 S.W.2d 450, 452 (Tex. App.—Houston [14th Dist.] 1997, no writ).

The issue before us is whether the record demonstrates substantial evidence supporting the ALJ's decision that Officer Chase possessed reasonable suspicion to stop her; we review the record accordingly applying the substantial evidence standard. Here, the ALJ's first finding of fact stated,

On February 3, 2007, Police Officer J. Chase, Northlake Police Department, at approximately 1:52 a.m., personally observed a motor vehicle, i.e., a black Toyota Tacoma being driven by Defendant north bound on Interstate Highway 35W, a public place in Northlake, Denton County, Texas. Defendant's vehicle wove out of and back into its lane of travel to the right onto the shoulder of the roadway three times. Defendant denied that she had made such a maneuver. Defendant's vehicle's speed was estimated by Chase by pacing to be approximately 48 miles per hour. Defendant's vehicle was driving in a 65 miles per hour zone. Defendant testified she was slowing to look at an unlit roadside sign. Chase made a stop of Defendant. On February 3, 2007, reasonable suspicion to stop or probable cause to arrest the Defendant existed.

The record before the ALJ included the officer's sworn report. Following the sworn report was DWI Case Report #070160, which included the following information: that this was a nonaccident case involving Riley in the 14000 block of IH-35W northbound at 1:52 a.m. on Saturday, February 3, 2007; that it was "dark–not lighted" with "clear/cloudy" weather; that the road was "blacktop" with a "dry" surface; that the road was marked for traffic lanes and was "straight and level"; that Officer Chase initially noticed Riley's vehicle because it "traveled from the right lane onto the shoulder three times without signaling"; and that she was traveling forty-eight miles per hour where the posted speed limit was sixty-five miles per hour. The remainder of the eight-page report includes details of the sobriety testing that Officer Chase

11

conducted, the statutory warning given to Riley before she consented to give a breath specimen, and the Intoxilyzer results.

After reviewing the administrative record, we conclude that substantial evidence supports the ALJ's reasonable suspicion determination. Specifically, the officer could have reasonably concluded that Riley had committed a traffic offense each time she traveled onto the shoulder. *See* TEX. TRANSP. CODE ANN. § 545.058(a). Although driving on the shoulder is permitted when "necessary" for seven listed reasons, Officer Chase could have reasonably concluded that Riley's conduct in driving on the shoulder three times negated application of any of the seven statutory reasons permitting a one-time driving on the shoulder. *See id.* Additionally, at the ALJ hearing Riley did not testify that she drove on the shoulder for any of the seven statutorily authorized reasons. Instead, she testified that she never drove on the shoulder at all. Thus, conflicting evidence existed before the ALJ: either Riley drove on the shoulder three times while Officer Chase followed her or she did not drive on the shoulder at all. The only issue before the county court at law was whether substantial evidence supported the ALJ's findings. The county court is not permitted to disregard an ALJ's factual determinations where there is conflicting evidence. *See Mireles*, 9 S.W.3d at 131. We hold that substantial evidence supported the

12

ALJ's reasonable suspicion determination. *See Tex. Dep't of Pub. Safety v. Nunez*, 956 S.W.2d 603, 607 (Tex. App.—Fort Worth 1997, pet. denied) (reversing and rendering judgment affirming the ALJ's decision to suspend license where ALJ made finding of fact that trooper observed appellee's vehicle swerve from the outside lane almost completely onto the improved shoulder); *see also Castilleja v. Tex. Dep't of Pub. Safety*, No. 04-05-00841-CV, 2006 WL 2546327, at *1 (Tex. App.—San Antonio Sept. 6, 2006, no pet.) (mem. op.) (holding that substantial evidence supported ALJ's finding that reasonable suspicion supported trooper's stop of appellant where the offense report admitted into evidence before the ALJ stated that appellant's car was traveling more than twenty miles under the speed limit and crossed the solid white line, thereby driving on the improved shoulder). We therefore sustain the Department's first issue.

The Department, after disposing of the trial court's purported reason for reversing the ALJ's decision, argues in its second issue that there was no other reason for the trial court to reverse the ALJ's decision. Specifically, the Department argues that in addition to proving that the officer had reasonable suspicion to stop, it also proved that Riley had an alcohol concentration of 0.08 or more while operating a motor vehicle in a public place. Based on our review

13

of the record, including the Intoxilyzer results of .135 and .120, we agree and hold that the Department proved both issues that it was required to prove under chapter 524 at the ALJ hearing in order to uphold Riley's license suspension. *See* TEX. TRANSP. CODE ANN. § 524.035(a). We therefore sustain the Department's second issue.

## VI. CONCLUSION

Having sustained the Department's two issues, we reverse the trial court's order and render judgment reinstating the ALJ's order.

SUE WALKER
JUSTICE

PANEL: CAYCE, C.J.; GARDNER and WALKER, JJ.

DELIVERED: August 7, 2008

14