COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-183-CR

 

 

CHAD AVERY FOWLER                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

The question in this DWI case
is whether a police officer has probable cause or reasonable suspicion for a
traffic stop when the officer observes the 
the tires of the defendant=s vehicle cross into an adjacent same-direction lane by a tire=s width a single time when there is no other traffic in the area.  We answer Ano@ and reverse
the trial court=s judgment.








                                            Background            

On July 23, 2005, a little
after midnight, Officer Patrick Knotts of the Mansfield Police Department was
driving directly behind Appellant=s pick-up truck on Debbie Lane, a four-lane road divided by a
median.  Officer Knotts testified that he
observed the truck cross into an adjacent same-direction lane by a tire=s width and that the truck drifted within its lane two more times,
touching the white line between the lanes. 

Officer Knotts immediately
initiated a traffic stop, and Appellant pulled into a private driveway.  According to Officer Knotts, when he asked
Appellant for his license and insurance information, Appellant acted strange,
seemed disoriented, and fumbled through his camera bag before pulling his
wallet from his shorts pocket.  Officer
Knotts also noticed that Appellant=s eyes were red, glassy, and bloodshot.  Appellant had a hard time concentrating and
did not properly respond to Officer Knotts=s questioning.  Appellant told
Officer Knotts that he had consumed one twelve-ounce Keystone beer about an
hour prior to the stop.  However, Officer
Knotts found an open twelve-ounce Keystone beer in the front passenger seat of
Appellant=s truck, and
the can was cold to the touch.  








Officer Knotts asked
Appellant to perform some field sobriety tests. 
On the horizontal gaze nystagmus test, Officer Knotts observed a lack of
smooth pursuit in both eyes and four out of the six nystagmus clues.  Appellant then failed to maintain the mandated
stance in the walk-and-turn test.  He
stated that he could not perform the test because he was tired and refused to
continue the field sobriety tests all together. 
Appellant also refused to take a breath test.  Officer Knotts arrested Appellant for DWI due
to the loss of use of his mental and physical faculties.   

Appellant sought to suppress
all evidence from the traffic stop.  The
trial court held a hearing on his motion to suppress after jury selection but
before the presentation of evidence.  At
the conclusion of the hearing, the trial court denied Appellant=s motion to suppress.  A jury
convicted Appellant of DWI and sentenced him to twenty-five days= confinement and a fine of $650. 
This appeal followed.

                                             Discussion








In two points, Appellant
argues that the trial court erred in denying his motion to suppress because
Officer Knotts had no probable cause or reasonable suspicion to justify the
initial traffic stop.  The State argues
that Officer Knotts had reasonable suspicion that Appellant had violated
section 545.060(a) of the Texas Transportation Code.[1]   

1.                 
Standard of Review 








Generally, we review a
trial court=s ruling on
a motion to suppress evidence under a bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101,
108-09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.  The historical facts in this case are not
disputed; therefore, we review the ruling on the motion to suppress de
novo.  See Oles v. State, 993
S.W.2d 103, 106 (Tex. Crim. App. 1999). 

2.                 
Suppression Hearing Testimony

Officer Knotts was the State=s only witness at the suppression
hearing.  He testified, in relevant part,
as follows:

Q.  Okay. 
And around 12:25 a.m., did you observe anything out of the ordinary?

 

A.  I observed a white vehicle commit -- a white
truck commit a traffic violation, and it caught my attention.

 

Q.  Okay. 
And what was that traffic violation?

 

A.  Failed to drive in a single lane of traffic.

 

Q.  Okay. 
Could you describe for the Judge exactly how the vehicle failed to
maintain a single lane of traffic?

 

A.  Sure. 
The vehicle was observed traveling eastbound on Debbie Lane.  It crossed the white line, approximately a
tire=s width,
and then it drifted over and touched the white line two more times.








. . . . 

 

Q.  And you also testified the sole reason why
you stopped that vehicle was for failure to maintain a single lane of traffic.

 

A.  That=s
correct.

 

Q.  You also testified that you observed the
vehicle cross over the white line one time, approximately a tire=s width --

 

A.  Correct.

 

Q.  -- and then drift within its lane two other
times --

 

A.  And touch the white line.

 

Q.  -- and touch the white line.  Okay.

 

. . . . 

 

Q.  Do you recall what
block number that was, approximately?

 

A.  The violation was in
the 100 block.

 

. . . .

 

Q.  And where did you
effectuate the traffic stop?

 

A.  The vehicle stopped in the 200 block of
Debbie, East Debbie.

 

Q.  So approximately a
one-block period?

 

A.  Correct.

 

. . . .

 

Q.  So nothing was
dangerous about moving over that line?

 








A.  No vehicles were almost struck, so, no.

 

. . . .

 

Q.  Okay. 
Could you tell the Court the Transportation Code definition of Afailure to maintain a single lane@?

 

A.  If vehicles do not -- the vehicle has to
travel within the lane of traffic; then, if it=s
going to change lanes, it needs to signal that lane-change.  He never signaled any lane-change, so that
would be what I based the traffic stop off of.

 

Q.  And that=s
your understanding of the Transportation Code definition?           

 

A.  Failure to maintain a single lane of traffic
while operating a motor vehicle.

 

Q.  Okay. 
Did the vehicle commit any other traffic violations other than crossing
that line one time?

 

A.  No.

 

Q.  Did you observe any incident that came close
to causing an accident or was unsafe, in any manner, in that regard?

 

A.  No. 

 

Officer Knotts also testified that there was not a vehicle in the
adjacent lane when Appellant=s
tires crossed the line and that his vehicle did not strike the curb when it
crossed the line. 

 

 








3.                 
Reasonable Suspicion

In his second point, Appellant argues that Officer
Knotts illegally seized him by stopping him without reasonable suspicion that
he was, had been, or soon would be engaged in criminal activity.  We will consider this point first because if
the stop was unjustified by reasonable suspicion, then it was also unjustified
under the more stringent standard of probable cause.  See Klare v. State, 76 S.W.3d 68, 75
(Tex. App.CHouston
[14th Dist.] 2002, pet. ref=d).

The Fourth Amendment[2]
protects against unreasonable searches and seizures.  U.S. Const.
amend. IV.  To suppress evidence because
of an alleged Fourth Amendment violation, the defendant bears the initial
burden of producing evidence that rebuts the presumption of proper police
conduct.  Torres v. State, 182
S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State, 158 S.W.3d 488,
492 (Tex. Crim. App. 2005).  A defendant
satisfies this burden by establishing that a search or seizure occurred without
a warrant.  Torres, 182 S.W.3d at
902; Ford, 158 S.W.3d at 492. 
Once the defendant has made this








 showing, the burden of proof shifts to the
State, which must then establish that the government agent conducted the search
or seizure pursuant to a warrant or that the agent acted reasonably.  Torres, 182 S.W.3d at 902; Ford,
158 S.W.3d at 492.

The Supreme Court has held
that a detention is reasonable under the Fourth Amendment if the government
agent reasonably suspects a person of engaging in criminal activity.  Terry v. Ohio, 392 U.S. 1, 22, 88 S.
Ct. 1868, 1880 (1968); Carmouche, 10 S.W.3d at 328.[3]  Reasonable suspicion exists when, based on
the totality of the circumstances, the officer has specific, articulable facts
that when combined with rational inferences from those facts, would lead the
officer to reasonably conclude that a particular person is, has been, or soon
will be engaged in criminal activity.  Ford,
158 S.W.3d at 492B93.  This is an objective standard that disregards
any subjective intent of the officer making the stop and looks solely to
whether an objective basis for the stop exists. 
Id. at 492.

 








a.                  
Section 545.060(a) of the Texas Transportation Code 

Officer Knotts testified that he stopped Appellant
because he observed Appellant failing to maintain a single lane of
traffic.  The relevant provision of the
transportation codeCsection
545.060(a)Cprovides
as follows:

(a)        An operator on a roadway divided into two or more clearly
marked lanes for traffic:

 

(1)        shall drive as nearly as practical entirely within a single
lane; and

 

(2)        may not move from the lane unless that movement can be made
safely.  

 

Tex. Transp. Code Ann.
' 545.060(a) (Vernon 1999)
(emphasis added).

Although the statute has two subparts, it does not
create two separate offenses, but rather only one: moving out of a marked lane
when it is not safe to do so.  Hernandez
v. State, 983 S.W.2d 867, 871 (Tex. App.CAustin
1998,  pet. ref=d).  In Hernandez, the Austin court
analyzed the legislative history of section 545.060 and determined that because
neither section 545.060 nor its predecessor created two offenses, the words Aunless that movement can be made safely@ necessarily modify both subsections,
adding,








[T]he
very vagueness of the requirement that the operator of a vehicle drive within a
single lane Aas nearly
as practical@
indicates that the legislature did not intend for the initial clause of the
statute to create a discrete offense apart from some element of unsafety. This
conclusion is bolstered by the use of the term Apractical@ rather than Apracticable.@ The latter term has a somewhat more
definite meaning: Acapable
of being accomplished; feasible; possible,@
while the former term is more ambiguous: Amanifested
in practice; capable of being put to good use.@
Bryan A. Garner, A Dictionary of Modern Legal Usage 678 (2d ed.1995).

 

Id.








Thus, the Hernandez court held that a
vehicle=s slow
drift until two of its tires crossed into another same-direction lane, at an
hour when there were few other cars about, did not give rise to a reasonable
suspicion of criminal activity because the State presented no evidence that the
driver=s failure
to drive in a single lane was unsafe or dangerous.  Id. at 869B70,
872.  Many other courts have reached the
same conclusion under similar facts.  See,
e.g., State v. Huddleston, 164 S.W.3d 711, 713B14 (Tex. App.CAustin
2005, no pet.) (holding officer lacked reasonable suspicion of violation of
section 545.060 when he saw car slowly drift over fog line by a few inches five
times over five to six miles while traveling one to eight miles per hour under
speed limit); Eichler v. State, 117 S.W.3d 897, 898 (Tex. App.CHouston [14th Dist.] 2003, no pet.)
(holding no reasonable suspicion when car crossed line between middle and fast
lanes once on interstate highway in light traffic at 12:30 a.m.); Bass v.
State, 64 S.W.3d 646, 649B50
(Tex. App.CTexarkana
2001, pet. ref=d)
(holding no reasonable suspicion existed when car swerved within and outside
its lane over two and one‑half to three miles and was passed by other
vehicles); Corbin v. State, 33 S.W.3d 90, 94 (Tex. App.CTexarkana 2000), rev=d on other grounds, 85 S.W.3d 272
(Tex. Crim. App. 2002) (holding no reasonable suspicion existed when in course
of twenty feet, defendant drove thirteen miles per hour under speed limit and
crossed over fog line once before driving one mile with no further
infractions); State v. Cerny, 28 S.W.3d 796, 798 (Tex. App.CCorpus Christi 2000, no pet.) (holding
no reasonable suspicion existed when car Ajust
barely@ swerved
into shoulder of lane of oncoming traffic, then swerved over inside fog line
three to four times); State v. Arriaga, 5 S.W.3d 804, 805 (Tex. App.CSan Antonio 1999, pet. ref=d) (holding no reasonable suspicion
existed when van drifted toward center dividerCbut
within laneCtwo to
seven times near nightclub around 1:50 a.m.); State v. Tarvin, 972
S.W.2d 910, 911 (Tex. App.CWaco
1998, pet. ref=d)
(holding no reasonable suspicion existed when car drifted over outside fog line
two to three times at 2:00 a.m. near nightclub).













By contrast, in those cases where courts have held
that a driver=s failure
to maintain a single lane triggered a reasonable suspicion that the driver had
violated section 545.060, the failure to drive in a single lane was coupled
with some other factor that indicated danger or a lack of safety, such as the
driver=s leaving
a bar, driving in heavy traffic, crossing into a lane of oncoming traffic, or
weaving over an extended distance or time.  See, e.g., Tyler v. State, 161 S.W.3d 745,
746 (Tex. App.CFort
Worth 2005, no pet.) (holding reasonable suspicion existed when police stopped
driver after anonymous tip of erratic driving and weaving in heavy traffic on
Thanksgiving weekend); Cook v. State, 63 S.W.3d 924, 926B27 (Tex. App.CHouston
[14th Dist.] 2002, pet. ref=d)
(holding reasonable suspicion existed when car sped out of bar parking lot,
suspiciously pulled into gas station for ten to fifteen seconds, then drove Aall over@
two unmarked roads before Aconstantly@ crossing into other lane for about two
minutes on marked lane‑divided road); Griffin v. State, 54 S.W.3d
820, 821 (Tex. App.CTexarkana
2001, pet. ref=d)
(holding reasonable suspicion existed when, after receiving informant tip that
defendant would be carrying heroin, officer saw defendant=s car cross yellow line into lane of
oncoming traffic); Martinez v. State, 29 S.W.3d 609, 610 (Tex. App.CHouston [1st Dist.] 2000, pet. ref=d) (holding reasonable suspicion
existed when car drifted onto shoulder for only a few seconds, but on freeway
during busy traffic); Tex. Dep=t
of Pub. Safety v. Bell, 11 S.W.3d 282, 282B83
(Tex. App.CSan
Antonio 1999, no pet.) (holding reasonable suspicion existed when car crossed
into shoulder of lane of oncoming traffic); Gajewski v. State, 944
S.W.2d 450, 451 (Tex. App.CHouston
[14th Dist.] 1997, no pet.) (holding reasonable suspicion existed when on two‑lane
highway, one‑third of car crossed into oncoming lane two to three times).


In this case, there is no evidence that Appellant=s failure to drive in a single lane was
unsafe.  The specific facts articulated
by Officer Knotts show that two of Appellant=s
tires drifted into an adjacent same-direction lane one time and by no more than
a tire=s
width.  There was no other vehicle in the
lane next to Appellant, and Officer Knotts expressly stated that the movement
of Appellant=s truck
was not unsafe or dangerous.  Absent from
Officer Knott=s
testimony are any of the factors present in the cases cited above where courts
found a reasonable suspicion that a driver had violated section 545.060, such
as a driver=s
crossing the center line into oncoming traffic.








The State argues that because Officer Knotts believed
that Appellant had committed an act that Officer Knotts believed was
prohibited by the transportation code, he had reasonable suspicion to stop
Appellant.  The State relies on a series
of cases, some from this court, for the proposition that the State is not required
to prove a defendant violated a traffic law but only needs to elicit testimony
that the officer reasonably suspected that a defendant violated a traffic
law.  See McQuarters v. State, 58
S.W.3d 250, 255 (Tex. App.CFort
Worth 2001, pet. ref=d);
see also Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

 Officer
Knotts testified that in his Aunderstanding@ of the transportation code, a driver
commits an offense merely by failing to maintain a single lane of traffic and
that if a driver intends to change lanes, he needs to signal that lane change.[4]  There is no evidence that Appellant Achanged lanes@
or intended to change lanes; thus, his failure to activate his turn signal
could not provide a reasonable suspicion for the stop.  That leaves Officer Knotts=s Aunderstanding@ of what constitutes a violation of
section 545.060(a) as the only possible basis for the stop.  As our foregoing analysis of the statute and
case law shows, Officer Knotts=s
understanding was wrong.








An officer=s
reasonable suspicion of an alleged traffic violation cannot be based on a
mistaken understanding of traffic laws. United States v. Granado, 302
F.3d 421, 423 (5th Cir. 2002); Goudeau v. State, 209 S.W.3d 713, 716
(Tex. App.CHouston
[14th Dist.] 2006, no pet.).  And an
officer=s honest
but mistaken understanding of the traffic law which prompted a stop is not an
exception to the reasonable suspicion requirement.  Goudeau, 209 S.W.3d at 716.  Thus, Officer Knotts=s
misunderstanding that section 545.060(a) requires only crossing of the lane
lineCregardless
of whether it is unsafe or dangerous to do soCwill
not support a reasonable suspicion.

McQuarters and the other cases cited by the
State do not change this result.  McQuarters
cites Garcia for the proposition that Athe
State was not required to prove appellant violated a traffic law. The State
only needed to elicit testimony that [the police officer] knew sufficient facts
to reasonably suspect that appellant had violated a traffic law.@ 
58 S.W.3d at 255.  In the relevant
portion of Garcia, the court of criminal appeals stated that A[t]he State is correct that it need not
establish with absolute certainty that a crime has occurred in order to show
reasonable suspicion.@  43 S.W.3d at 530.  Neither case holds or even suggests that an
officer=s
ignorance of the law will somehow satisfy the Fourth Amendment and rise to the
level of reasonable suspicion.  To so
hold would transform the Fourth Amendment=s
objective standard into a subjective standard dependent on the whims of the
police=s Aunderstanding@
of the law.








We hold that Officer Knotts failed to articulate
specific facts that support a reasonable suspicion that Appellant had violated
section 545.060(a).  See   Ford, 158 S.W.3d at 492B93.  We therefore hold
that there was no reasonable suspicion for the initial stop and that the trial
court erred by failing to suppress the evidence developed during the stop.  We sustain Appellant=s second point.

Because the State failed to
carry its burden of showing a reasonable suspicion, it also failed to carry the
heavier burden to show probable cause for the stop, and we sustain Appellant=s first issue.  See Klare,
76 S.W.3d at 75.

                                             Conclusion

Having sustained both of
Appellant=s points, we
reverse the trial court=s judgment
and remand this case to the trial court for further proceedings.

 

 

ANNE GARDNER

JUSTICE

 

EN
BANC

 

MCCOY,
J. filed a concurring opinion.

 

PUBLISH

 

DELIVERED:  August 14, 2008      

 

 

 

 

 

 

 

 

 

 








 




 
 
 
 
 
 
 




 

 

 

 

 

 

                                COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-06-183-CR

 

 

CHAD AVERY FOWLER                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                  CONCURRING
OPINION

 

                                              ------------

I agree with the result
reached by the majority in this case but do not agree with one aspect of their
reasoning.  As recounted by the majority,
section 545.060(a) of the Transportation Code reads as follows:  

(a)     An operator on a roadway divided into two or more clearly marked
lanes for traffic:

 

(1)    shall drive as nearly as practical entirely within a single lane;
and








 

(2)
may not move from the lane unless that movement can be made safely.

 

Tex. Transp. Code Ann. ' 545.060(a)
(Vernon 1999).  I cannot agree that the
phrase Aunless that movement can be made safely@ modifies both subsections (1) and (2), as held by the majority, for
the following reasons:  (1) section (a)
is clearly separated into two discrete sections, (1) and (2), and the language
in question is clearly contained solely within the second section; (2) the
separate and independent nature of the sections is emphasized by the semicolon
separating the sections; (3) the term Amovement@ is clearly
referring to the word Amove@ three words before the phrase begins, and that word is not contained
in subsection (1); (4) if the phrase is added to the first subsection, which it
purports to modify, the initial subsection would read:  Ashall drive as nearly as practical entirely within a single lane
unless that movement can be made safely@--this is jabberwocky.[5]  

Nevertheless, I reluctantly
agree that section (a) of the Transportation Code contains but one offense,
enumerated as subsections (1) and (2), and that the tsunami of case law
requiring some other endangering factor, besides the








failure to drive in a single lane, to be a
violation of the statute, is correct. 
Hence, I concur in the outcome as determined by the majority.

 

 

BOB MCCOY

JUSTICE 

 

PUBLISH

 

DELIVERED:  August 14, 2008

 











[1]On
appeal, the State does not argue that Officer Knotts had probable cause for the
stop.





[2]Where,
as in this case, the appellant has not separately briefed state and federal
constitutional claims, we assume that the appellant claims no greater
protection under the state constitution than that provided by the federal
constitution.  Varnes v. State, 63
S.W.3d 824, 829 (Tex. App.CHouston [14th Dist.] 2001, no
pet.).  Therefore, we will analyze
Appellant=s
claim solely under the Fourth Amendment of the United States Constitution,
following guidelines set by the United States Supreme Court in interpreting the
Fourth Amendment.  See State v. Guzman,
959 S.W.2d 631, 633 (Tex. Crim. App. 1998).





[3]Because
a routine traffic stop typically involves only a short, investigative
detention, as opposed to a custodial arrest, we analyze traffic stops under the
principles developed for investigative detentions set forth in Terry v. Ohio.  392 U.S. at 22, 88 S. Ct. at 1880; see
Berkemer v.  McCarty, 468 U.S. 420,
104 S. Ct.  3138 (1984); Martinez v.
State, 236 S.W.3d 361, 369 (Tex. 
App.CFort
Worth 2007, no pet.).





[4]See Tex. Transp. Code Ann. ' 545.104(a)
(Vernon 1999) (AAn
operator shall use the [turn] signal . . . to indicate an intention
to turn, change lanes, or start from a parked position.@).





[5]See Lewis Carroll, Jabberwocky and Other Poems 17 (Courier
Dover Publications 2001).