**Opinion issued December 6, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NOS. 01-11-00253-CR, 01-11-00254-CR, 01-11-00255-CR

————————————

**DANIEL NADER HAIZE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1205375, 1207233, 1286077**

## MEMORANDUM OPINION

Appellant, Daniel Nader Haize, with an agreed punishment recommendation from the State, pleaded guilty to the offense of possession of a controlled

substance, namely, gamma hydroxubutyrate ("GHB"),[1] and, in accordance with the plea agreement, the trial court assessed his punishment at confinement for four years. The State also moved to adjudicate appellant's guilt on the offenses of aggravated assault with a deadly weapon[2] and violation of a protective order,[3] for which appellant had been previously placed on community supervision. The trial court granted the State's motions to adjudicate guilt for both offenses and assessed appellant's punishment at confinement for eight years for each offense, with each sentence to run concurrently. In two issues, appellant contends that the trial court erred in denying his motion to suppress evidence and not holding an evidentiary hearing on his motion for new trial.

We affirm.

## Background

In 2009, appellant, with an agreed punishment recommendation from the State, pleaded guilty to the offenses of aggravated assault with a deadly weapon and violation of a protective order. Pursuant to his plea agreements in both cases,

---

[1]     *See* TEX. HEALTH AND SAFETY CODE ANN. §§ 481.002(5), 481.102(9), 481.112(a), (d) (West 2010); appellate cause no. 01-11-00255-CR; trial court cause no. 1286077.

[2]     *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011); appellate cause no. 01-11-00253-CR; trial court cause no. 1205375.

[3]     *See id.* § 25.07(a) (West Supp. 2012); appellate cause no. 01-11-00254-CR; trial court cause no. 1207233.

the trial court deferred adjudication of appellant's guilt and placed him on community supervision for four years.

On November 20, 2010, a Harris County grand jury issued a true bill of indictment, accusing appellant of the offense of possession of a controlled substance, namely GHB, weighing more than four grams but less than 200 grams. The State then filed motions to adjudicate appellant's guilt in the cases involving the offenses of aggravated assault with a deadly weapon and violation of a protective order, alleging that appellant had violated a term of his community supervision, i.e., that he "[c]ommit no offense against the laws of this or any other State or of the United States." The State later amended both motions to further allege that appellant had violated another term of his community supervision by possessing a firearm. Appellant then filed a motion to suppress evidence in the controlled-substance case.

At the hearing on appellant's motion, Houston Police Department ("HPD") Officer J. Crawford testified that on November 20, 2010, he, along with Officer C. Holloway, patrolled an area that was "known for selling drugs." Crawford saw a car driving "basically split down the middle" of Center Street, a two-way street. The car travelled in the middle of the road for the "entire block" for approximately "three to five seconds." Crawford believed that the driver of the car could have

3

been intoxicated because he was "driving on the wrong side of the road and could very easily have caused an accident."

Officer Crawford initiated a traffic stop of the car and approached appellant, the driver of the car, while Officer Holloway approached the passenger's side of the car. Holloway then told Crawford that he saw a gun inside the car. When Crawford positioned himself to see the gun, he also saw a "piece of a meth pipe" sticking out. Both the gun and the pipe were in a pocket on the back of the passenger's seat. The handle of the gun was "facing the driver" and "[w]ithin arm's length" of him. Crawford then arrested appellant while Holloway placed the passenger, Cara Gregory, into the back seat of their patrol car. Upon speaking with appellant, Crawford could "smell alcohol on his breath."

After the arrest, Crawford searched the trunk of appellant's car, where he saw a water bottle. When he picked up the water bottle, he noticed that the liquid inside the bottle was "not as clear as water" and seemed "a lot heavier" and "thicker" than water. From his experience, Crawford concluded that the liquid was "probably" GHB, which he described as a "date rape drug." Crawford then returned to the patrol car and listened to an audio recording made of a conversation between appellant and Gregory that occurred while they were waiting in the back seat of the patrol car. From that recording, Crawford determined that appellant possessed the bottle of GHB.

On cross-examination, Officer Crawford explained that Officer Holloway, in his offense report, characterized appellant's traffic offense as "left of center." Crawford admitted that appellant was not "speeding" or "swerving" and did not "almost cause an accident," but he maintained that appellant was "driving on the wrong side of the road" and "could possibly [have been] intoxicated."

Officer Holloway testified that the officers initiated the traffic stop when they saw appellant's car "drive down the center stripe" for "approximately five seconds." Holloway saw that "half of his car was on the left side, half it was on the right." He explained that he characterized appellant's traffic violation as "[d]riving left of center" in his offense report to indicate that appellant was "driving left of the center divider." Holloway described the term "left of center" as "police slang" for "not driving on the right side of the road." On cross-examination, Holloway admitted that a section of the Texas Transportation Code contains an offense that refers to "driving to the left of center of roadway limitations other than passing." He, however, insisted that the officers initiated the traffic stop of appellant for driving down the middle of the road.

After the hearing, the trial court denied appellant's motion to suppress evidence and adjudicated appellant's guilt for the offenses of aggravated assault with a deadly weapon and violation of a protective order. Appellant then pleaded guilty to the offense of possession of a controlled substance.

5

**Motion to Suppress Evidence**

In his second issue, appellant argues that the trial court erred in denying his motion to suppress evidence because the seizure of the evidence from his car was "based on an illegal traffic stop." Appellant asserts that the evidence elicited during the hearing failed to establish that Officers Crawford and Holloway saw appellant commit a traffic violation, and, thus, "the whole encounter . . . could not have been based upon reasonable suspicion."

We review a ruling on a motion to suppress evidence for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). At a suppression hearing, a trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or to disbelieve all or any part of a witnesses' testimony. *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Unless a trial court abuses its discretion in making a finding not supported by the record, we will defer to the trial court's fact

findings and not disturb the findings on appeal. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

A "stop" by a law enforcement officer "amounts to a sufficient intrusion on an individual's privacy to implicate the Fourth Amendment's protections." *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). However, it is well-established that a law enforcement officer may stop and briefly detain a person suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche*, 10 S.W.3d at 328. In order to stop or briefly detain an individual, an officer must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. Instead, an officer must have "reasonable suspicion" that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when the officer has some minimal level of objective justification for making the stop, i.e., when the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; *see also Alabama v. White*, 496 U.S. 325, 329–30, 110 S. Ct. 2412, 2416 (1990). We disregard the subjective belief of the officer in our reasonable suspicion analysis

and consider the totality of the circumstances objectively. *Ford*, 158 S.W.3d at 492–93.

It is well-established that an officer may lawfully stop an individual for a traffic violation. *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000). The Texas Code of Transportation provides, in pertinent part, that,

> An operator on a roadway of sufficient width shall drive on the right half of the roadway, unless:
>
> (1)   the operator is passing another vehicle;
>
> (2)   an obstruction necessitates moving the vehicle left of the center of the roadway . . .[;]
>
> (3)   the operator is on a roadway divided into three marked lanes for traffic; or
>
> (4)   the operator is on a roadway restricted to one-way traffic.

TEX. TRANSP. CODE ANN. § 545.051(a) (West 2011). It further provides that,

> An operator may not drive to the left side of the roadway if the operator is:
>
> (1)   approaching within 100 feet of an intersection or railroad grade crossing in a municipality. . . .

*Id.* § 545.056(a)(1) (West 2011).

At the hearing on appellant's motion to suppress evidence, Officer Crawford explained that Center Street, where he saw appellant driving his car, consists of "one lane going one way and one lane going the other way." Crawford saw

8

appellant driving his car "basically split down the middle . . . of the road" for an "entire block." Appellant drove in that manner for "probably three to five seconds" until he made a right turn. Officer Holloway further explained that if the yellow-line divider was a "plane," it would have been "chopping the car in two." Holloway noted that appellant drove down the middle of the road for approximately "five seconds" before the officers initiated the traffic stop.

Officer Holloway testified that he wrote in his offense report that appellant was driving "left of center" because it is "police slang" for "not driving on the right side of the road." Holloway identified such driving as a violation of section 545.051, which requires the operator of a motor vehicle to drive on the right half of the roadway in lieu of certain exceptions. On cross-examination, Holloway admitted that section 545.056 of the Texas Transportation Code is entitled "Driving to Left of Center of Roadway," but he maintained that the officers initiated the traffic stop for a violation of section 545.051.

At the conclusion of the hearing, the trial court found that "the officers did have probable cause to make the stop" under section 545.051 and there was no evidence regarding any of the exceptions to section 545.051. The trial court further found that the officers had reasonable suspicion to stop appellant under 545.056 because "the officers described him driving in the center until he got up to the stop sign."

9

Appellant argues that the trial court erred in concluding that the officers had reasonable suspicion to initiate the traffic stop because there were no indications that he was "travelling in an unsafe manner." In support of this argument, appellant relies on *Hernandez v. State*, 983 S.W.2d 867 (Tex. Crim. App. 1998) and *Unites States v. Raney*, 633 F.3d 385 (5th Cir. 2011). In *Hernandez*, police officers believed that the defendant had committed a violation of Transportation Code section 545.060(a), which provides than an operator on a roadway "shall drive as nearly as practical entirely within a single lane" and "may not move from the lane unless that movement can be made safely." 983 S.W.2d at 871 (quoting Tex. Transp. Code Ann. § 545.060(a) (West 1997)). The court noted that the language of the statute indicated that a violation of the section occurs "only when a vehicle fails to stay within its lane *and* such movement is not safe or is not made safely." *Id.* (emphasis in original). The court held that the State did not carry its burden to prove that the defendant violated section 545.060 because the police officer's testimony was that the defendant had "drift[ed]" slowly into the adjacent lane. *Id.* at 869, 872.

Here, however, unlike the statute at issue in *Hernandez*, neither section 545.051 nor section 545.056 includes an exception for vehicle movements made "safely." *See Johnson v. State*, 365 S.W.3d 484, 489 (Tex. App.——Tyler 2012, no pet.) (stating that, because section 545.051(a) "does not contain an 'unless the

10

movement can be made safely' exception," whether defendant "could safely cross the center line is irrelevant"); *Ray v. State*, No. 14-03-00610-CR, 2004 WL 794517, at *1 (Tex. App.—Houston [14th Dist.] Apr. 15, 2004, no pet.) (mem. op.) (holding that testimony of police officer that defendant "traveled on the wrong side of [the street], stopped . . ., then traveled in reverse on the wrong side for almost an entire block" constituted a violation of section 545.051). Thus, the testimony of Officers Crawford and Holloway that appellant was driving "down the middle of the road" for "an entire block" on a two-way street, immediately before turning at a stop sign, was sufficient to support a conclusion that appellant had violated sections 545.051 and 545.056.

In *Raney*, police officers testified that they initiated a traffic stop pursuant to section 545.051. 633 F.3d at 390. Police officers were "settling disturbances stemming from Hurricane Ike-related gasoline shortages" at a gas station when the defendant crossed his car into the northbound lane of traffic. *Id.* at 388. The southbound lane in which the defendant's car had been traveling was "entirely blocked" by cars attempting to turn into the gas station. *Id.* at 390. When the defendant entered the northbound lane, a police officer signaled for him to pull over, and the defendant "immediately complied." *Id.* at 388. The government "essentially concede[d]" that the defendant did not violate section 545.051. *Id.* at 390. And the court noted that the cars "entirely block[ing]" the southbound lane of

11

traffic may have constituted "an obstruction" that necessitated the defendant moving his car left of the center of the roadway, one of the exceptions provided in section 545.051. *Id*; *see also* TEX. TRANSP. CODE ANN. § 545.051(a)(2).

Here, however, Officer Crawford testified that there were no "obstructions" in the roadway and appellant was not attempting "to pass any slower vehicles." Likewise, Officer Holloway testified that he saw no "physical obstructions" forcing appellant to move to the center of the roadway and appellant did not pass any cars. Furthermore, it is undisputed that Center Street is a two-lane street not restricted to one-way traffic. Thus, unlike in *Raney*, there is evidence in the instant record from which the trial court could have concluded that none of the exceptions in section 545.051(a) applied. And the trial court specifically stated that there was no evidence of any obstruction as discussed in section 545.051(a).

Officers Crawford and Holloway's testimony that appellant drove down the middle of a two-way street for "an entire block" was sufficient for the trial court to conclude that they had a "reasonable suspicion" that appellant had committed a traffic violation. *See Ford*, 158 S.W.3d at 492. Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's motion to suppress evidence.

We overrule appellant's second issue.

**Motion for New Trial**

In his first issue, appellant argues that the trial court erred in not holding an evidentiary hearing on his motion for new trial because "the court should have conducted a further review of the arresting officers and their relationship with the prosecuting attorney" to determine "if the prosecutor had coached the officers" for their testimony.

We review a trial court's denial of a hearing on a new-trial motion for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). The purposes of a new-trial hearing are (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). There is not an absolute right to such a hearing. *Id.* However, a trial court abuses its discretion in not holding a hearing if the new-trial motion and accompanying affidavits (1) raise matters that are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id.* A trial court cannot be said to have abused its discretion in denying a motion for new trial on a basis that was not presented to it. *Keeter v. State*, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005).

Appellant argues that a "claim of prosecutorial misconduct may be raised on a motion for new trial" and "[h]olding a hearing on a motion for new trial is . . .

necessary to complete the record for an allegation of prosecutorial misconduct." *See Ex Parte Mitchell*, 977 S.W.2d 575, 578 (Tex. Crim. App. 1997); *Gaitan v. State*, 905 S.W.2d 703, 706 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd). In his motion for new trial, however, appellant raised three "Grounds For Granting A New Trial," asserting that,

1. The trial court erred in denying [appellant's] motion to suppress evidence.

2. The evidence was insufficient to support the trial court's finding that the State proved the new law violations as set forth in the State's motions to adjudicate defendant's guilt.

3. Defendant's guilty plea in cause number 1286077 was involuntary.

Appellant simply did not raise a claim of prosecutorial misconduct to the trial court in his motion for new trial. Although appellant asserts that he "raised the issue of possible misconduct during the suppression hearing," there is no mention of prosecutorial misconduct in either his motion for new trial or the supporting affidavits of appellant and his attorney. We cannot conclude that the trial court abused its discretion in not holding an evidentiary hearing on a motion for new trial on a ground that was not presented to the trial court. *See Keeter*, 175 S.W.3d at 759–61 (holding that defendant did not preserve *Brady* claim for appellate review when it was not raised in his motion for new trial or during motion for new

14

trial proceedings). Accordingly, we hold that appellant has not preserved his complaint for review. *See id.*; TEX. R. APP. P. 33.1(a)(2).

We overrule appellant's first issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish. TEX. R. APP. P. 47.2(b).