# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-20-00519-CR
---

**Bernard Daniel, Appellant**

**v.**

**The State of Texas, Appellee**

---
### FROM THE 27TH DISTRICT COURT OF BELL COUNTY
### NO. 80234, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING
---

## O P I N I O N

Following the denial of his motion to suppress evidence, appellant Bernard Daniel pleaded guilty to the felony offense of driving while intoxicated and was placed on community supervision for four years. In a single issue on appeal, Daniel contends that the district court should have granted the motion to suppress. We agree and will reverse the judgment of conviction.

## BACKGROUND

At the hearing on the motion to suppress, former Killeen Police Department Officer John Todd testified that on the night of April 15, 2017, he stopped Daniel's vehicle for failing to maintain a single lane of traffic. Todd first observed Daniel's vehicle stopped at the intersection of Central Texas Expressway and Stan Schlueter Loop in Killeen. There were two left-turn lanes at the intersection. Daniel's vehicle, which was in the outer turn lane, turned left

onto Stan Schlueter Loop. As the vehicle made the turn, "approximately half the vehicle" crossed the dotted white line separating the outer turn lane from the inner turn lane, before returning to the outer lane. After completing the turn, Daniel's vehicle continued driving on Stan Schlueter Loop in the outer westbound lane of the four-lane divided roadway, followed by Todd's patrol vehicle. Todd testified that he observed Daniel's vehicle cross the dotted white line dividing the outer and inner westbound lanes on two other occasions before initiating the traffic stop. Todd acknowledged that the only reason he stopped Daniel's vehicle was for failure to maintain a single lane of traffic. Todd also acknowledged that at the times he observed Daniel's vehicle cross the line, there were no other cars near his vehicle.[1]

A video recording of the stop, taken from Todd's patrol-car dash camera, was also admitted into evidence. In the recording, Daniel's vehicle can be seen clearly crossing the line dividing the outer and inner turn lanes as Daniel turned left, but, as Todd acknowledged in his testimony and as the State concedes in its brief, it is difficult to see on the video the other two times that Daniel's vehicle crossed the line.

During the traffic stop, Todd spoke with Daniel, observed signs that he was intoxicated, and subsequently arrested him for driving while intoxicated. Prior to trial, Daniel filed a motion to suppress evidence of his intoxication, asserting that Todd lacked reasonable suspicion to initiate the traffic stop. At the hearing on the motion, Daniel argued that to violate the failure-to-maintain-a-single-lane statute, *see* Texas Transportation Code § 545.060(a), a motorist must have failed to maintain his lane under circumstances that were unsafe. Daniel contended that because there was no evidence that he had crossed the line in an unsafe manner,

---

[1] There was another vehicle stopped at the intersection at the same time as Daniel's vehicle, in the inner turn lane. However, that vehicle turned left before Daniel's vehicle did and was ahead of Daniel's vehicle by the time Daniel crossed the dividing line.

2

there was no violation of Section 545.060(a). The State argued in response that the video showed "a very clear failure to maintain a single lane during a left turn. [Daniel's] car went almost entirely into the inside lane as he made it into the roadway. That's a clear violation of the law." The district court took the matter under advisement and later denied the motion to suppress. On its docket sheet, the district court made findings of fact and conclusions of law, including the following:

> [Daniel] turned left and did not remain within his single marked lane; Officer Todd followed to make an investigatory stop; he indicated that he saw two more instances of not maintaining a single marked lane before the stop which were not unsafe[.]

> A warrantless stop was made upon probable cause which [led] to [Daniel]'s arrest and detention for DWI[.]

Daniel subsequently pleaded guilty to driving while intoxicated, was sentenced to four years' imprisonment, but had his sentence suspended and was placed on community supervision for four years. This appeal followed.

## STANDARD OF REVIEW

"We review a ruling on a motion to suppress using a bifurcated standard of review." *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019) (citing *Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex. Crim. App. 1997)). "A trial court's findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor are afforded almost total deference if they are reasonably supported by the record." *Id*. "That same deferential standard of review 'applies to a trial court's determination of historical facts [even] when that determination is based on a videotape recording admitted into evidence at a

3

suppression hearing.'" *State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013) (quoting *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006)). "We review a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor de novo." *Id.*

## DISCUSSION

**Reasonable suspicion**

In his sole issue on appeal, Daniel argues that the district court erred in denying his motion to suppress because Officer Todd lacked reasonable suspicion to initiate a traffic stop. "When a police officer stops a defendant without a warrant, the State has the burden of proving the reasonableness of the stop at a suppression hearing." *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018). "An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015) (citing *Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014)). "Reasonable suspicion exists if the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *Id.* (quoting *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013)). "The standard requires only 'some minimal level of objective justification' for the stop." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)). "We review a reasonable suspicion determination by considering the totality of the circumstances." *Cortez*, 543 S.W.3d at 204. "Whether the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact subject to de novo review." *Hamal*, 390 S.W.3d at 306 (citing

4

*State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012)); *State v. Colby*, 604 S.W.3d 232, 237 (Tex. App.—Austin 2020, no pet.); *see also State v. McMahan*, No. 03-19-00824-CR, 2020 WL 6533661, at *3 (Tex. App.—Austin Nov. 6, 2020, no pet.) (mem. op., not designated for publication).

In this case, the only basis for the traffic stop was Section 545.060(a) of the Texas Transportation Code, which provides that "[a]n operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely." Tex. Transp. Code § 545.060(a). Daniel does not dispute that he failed to drive as nearly as practical entirely within a single lane but contends that because there was no evidence that his movement from that lane was unsafe, Todd had no reason to suspect a violation of Section 545.060(a). The State concedes in its brief that "the evidence does not suggest any unsafe circumstances" and that "Todd's testimony tends to suggest there was nothing unsafe about Appellant's driving." The State contends, however, that Section 545.060(a) creates two separate offenses: (1) failure to drive as nearly as practical entirely within a single lane, and (2) moving from the lane in an unsafe manner. Thus, in the State's view, evidence of Daniel's failure to stay within his lane is sufficient, by itself, to support Todd's reasonable belief that Daniel had violated Section 545.060.

This Court rejected that argument in *Hernandez v. State*, 983 S.W.2d 867 (Tex. App.—Austin 1998, pet. ref'd). In that case, the State contended that a driver's "drift" across a lane marker into another lane of traffic traveling in the same direction, without any evidence that the drifting was unsafe, gave an officer reasonable suspicion to believe that the driver had violated Section 545.060(a). *Id*. at 869–70. The Court concluded that it did not. *Id*. at 871.

5

This Court began its analysis by observing that "the history of the relevant statutory provision seems to indicate that, with respect to a vehicle's straying over a lane marker, a traffic violation occurs only when the vehicle's movement is in some way unsafe." *Id*. This Court explained:

> In 1947 the legislature first enacted a traffic regulation regarding "driving on roadways laned for traffic," which provided as follows:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:

> (a) The driver of a vehicle shall drive as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

> This provision remained unchanged until the legislature enacted the Transportation Code in 1995. The replacement provision provides: "An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely." The enactment of the Transportation Code made no substantive change in the law.

*Id*. (internal citations omitted). This Court also placed significance on the legislature's "use of the term 'practical' rather than 'practicable' in the first clause of the statute. *Id*. "The latter term has a somewhat more definite meaning: 'capable of being accomplished; feasible; possible,' while the former term is more ambiguous: 'manifested in practice; capable of being put to good use.'" *Id*. (quoting Bryan A. Garner, A Dictionary of Modern Legal Usage 678 (2d ed.1995)). Thus, "the very vagueness of the requirement that the operator of a vehicle drive within a single lane 'as nearly as practical' indicates that the legislature did not intend for the initial clause of the statute to create a discrete offense apart from some element of unsafety." *Id*.

6

Based on the above considerations, this Court concluded,

> We believe the statutory language shows a legislative intent that a violation of section 545.060 occurs only when a vehicle fails to stay within its lane *and* such movement is not safe or is not made safely. Neither the current provision in the Transportation Code nor the original statute creates two separate offenses, but rather only one: moving out of a marked lane when it is not safe to do so.

*Id*. (emphasis in original). The construction of Section 545.060(a) that was first announced in *Hernandez* remains the law in this Court and at least two other intermediate courts of appeals. *See, e.g.*, *State v. Hardin*, No. 13-18-00244-CR, 2019 WL 3484428, at *3 (Tex. App.—Corpus Christi Aug. 1, 2019, pet. granted) (mem. op, not designated for publication); *State v. Bernard*, 503 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2016), *judgment vacated on other grounds*, 512 S.W.3d 351 (Tex. Crim. App. 2017); *Marrero v. State*, No. 03-14-00033-CR, 2016 WL 240908, at *3 (Tex. App.—Austin Jan. 14, 2016, no pet.) (mem. op., not designated for publication).

However, in *Leming v. State*, 493 S.W.3d 552 (Tex. Crim. App. 2016), a four-judge plurality of the Court of Criminal Appeals rejected this Court's reasoning in *Hernandez*. The plurality instead construed Section 545.060(a) as creating two separate offenses:

> Thus, it is an offense to change marked lanes when it is unsafe to do so; but it is also an independent offense to fail to remain entirely within a marked lane of traffic so long as it remains practical to do so, regardless of whether the deviation from the marked lane is, under the particular circumstances, unsafe.

*Id*. at 559–60.

7

Because *Leming* was a plurality opinion as to the construction of Section 545.060(a),[2] it is not binding precedent on this Court. *See State v. Martinez*, 570 S.W.3d 278, 284 (Tex. Crim. App. 2019); *Unkart v. State*, 400 S.W.3d 94, 99–100 (Tex. Crim. App. 2013). Nevertheless, the State contends that we should "reconsider *Hernandez*" and essentially adopt the reasoning of the *Leming* plurality.[3]

We decline to do so because *Hernandez* was decided correctly. Section 545.060(a) creates a single offense, for the reasons discussed in *Hernandez* and because the plain language of the statute compels such a conclusion. Again, Section 545.060(a) requires that "[a]n operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; *and* (2) may not move from the lane unless

---

[2] The court addressed two issues in *Leming v. State*, 493 S.W.3d 552 (Tex. Crim. App. 2016). The first issue, addressed in Part II of the opinion, was whether the failure to maintain a single lane of traffic needed to be unsafe to constitute an offense under Section 545.060(a). *Id*. at 556–61. Part II of the opinion rejected this Court's analysis in *Hernandez*. *Id*. Judge Yeary delivered an opinion with respect to Part II in which Presiding Judge Keller, Judge Meyers, and Judge Richardson joined. *Id*. at 553. Thus, Part II of the opinion was not supported by a majority of the judges on the court.

The second issue, addressed in Part III of the opinion, was whether the traffic stop could be upheld on the alternative legal theory that the officer had reasonable suspicion to believe that the defendant was driving while intoxicated. *Id*. at 561–65. A majority of the judges on the court concluded that the stop could be upheld on that theory. *Id*. Judge Yeary delivered the opinion of the Court with respect to Part III in which Presiding Judge Keller, Judge Meyers, Judge Alcala, and Judge Richardson joined. *Id*. at 553.

Judge Richardson filed a concurring opinion, joined by Judge Meyers. *Id*. at 565–66. Judge Keasler filed a dissenting opinion, joined by Judges Johnson and Hervey. *Id*. at 566–73. Judge Newell filed a separate dissenting opinion. *Id*. at 573–74.

[3] Contrary to what is implied in footnote 4 of the dissent, this Court has never cited the *Leming* plurality as authority regarding the interpretation of Section 545.060(a). Instead, we have cited *Leming* for general concepts such as, "for a peace officer to stop a motorist to investigate a traffic infraction, as is the case with any investigative stop, 'proof of the actual commission of the offense is not a requisite.'" *Leming*, 493 S.W.3d at 561 (quoting *Drago v. State*, 553 S.W.2d 375, 377 (Tex. Crim. App. 1977)).

that movement can be made safely." Tex. Transp. Code § 545.060(a) (emphasis added). The two clauses are joined by the conjunctive "and," which means that to violate Section 545.060(a), a motorist must both fail to drive as nearly as practical entirely within a single lane *and* fail to make that movement safely. If the legislature had intended a different result, it could have used the disjunctive "or" to separate the clauses, as it did in Section 545.060(b). *See In re A.L.M.*, 300 S.W.3d 914, 919 (Tex. App.—Texarkana 2009, no pet.) ("'Ordinarily the words "and" and "or," are in no sense interchangeable terms, but, on the contrary, are used in the structure of language for purposes entirely variant, the former being strictly of a conjunctive, the latter, of a disjunctive, nature.'" (quoting *Bd. of Ins. Comm'rs v. Guardian Life Ins. Co. of Tex.*, 180 S.W.2d 906, 908 (Tex. 1944)); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 12, 116 (2002) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives. . . . With a conjunctive list, all . . . things are required—while with the disjunctive list, at least one of the [things] is required, but any one . . . satisfies the requirement."). Additionally, reading the statutory requirements (a)(1) and (a)(2) together to form a single, complete offense, rather than two independent offenses, gives effect to the entire statute. We also observe that this construction of the statute is consistent with similar provisions in the Transportation Code that allow movement from one's lane if such movement can be done safely. *See, e.g.*, Tex. Transp. Code §§ 545.058(a) ("An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely."), 545.103 ("An operator may not . . . move right or left on a roadway unless movement can be made safely."). Finally, as the Court of Criminal Appeals has observed, "[d]riving is an exercise in controlled weaving. It is difficult enough to keep a straight path on the many dips, rises, and other undulations built into our roadways." *State v. Cortez*,

9

543 S.W.3d 198, 206 (Tex. Crim. App. 2018). To allow an officer to stop a motorist for momentarily drifting outside their lane of traffic, when there is no evidence that it was unsafe to do so, would seem to be an absurd result that the legislature could not have possibly intended. *Hernandez*'s construction of Section 545.060(a) avoids that result.

Additionally, even if we were inclined to reconsider *Hernandez*, "absent a decision from the Court of Criminal Appeals or this court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in the statutory law, we are bound by our prior panel decision." *Medina v. State*, 411 S.W.3d 15, 20 n.5 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Connor v. Hooks*, No. 03-19-00198-CV, 2021 WL 833971, at *8 & n.11 (Tex. App.—Austin Mar. 5, 2021, pet. filed) (mem. op.) (observing that prior panel opinions were "binding precedent on this Court" and finding "their reasoning more than adequate"); *Ayeni v. State*, 440 S.W.3d 707, 717 n.8 (Pemberton, J., concurring) ("We may not overrule a prior panel opinion of this court absent an intervening change in the law by the Legislature or a higher court or by decision of this court sitting en banc."). This is especially true in cases involving statutory construction, where "'the doctrine of stare decisis has its greatest force' because the Legislature can rectify a court's mistake, and if the Legislature does not do so, there is little reason for the court to reconsider whether its decision was correct." *Phelps v. State*, 532 S.W.3d 437, 443 n.6 (quoting *Sw. Bell Tel. Co., L.P. v. Mitchell*, 276 S.W.3d 443, 447–48 (Tex. 2008)).

The State, cognizant that a panel of this Court is bound by *Hernandez*, thus asks this Court to consider this case en banc. However, "[e]n banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consideration." Tex. R.

10

App. P. 41.2(c). Extraordinary circumstances are not present here, and because there are no cases in which this Court has not followed *Hernandez*, en banc consideration is unnecessary to secure or maintain uniformity of the court's decisions. Accordingly, we decline the State's invitation to consider this case en banc. We continue to follow this Court's holding in *Hernandez* that a violation of Section 545.060(a) requires both a failure to maintain a single lane of traffic and a failure to do so safely.

**Reasonable mistake of law**

The State argues in the alternative that even if we continue to follow this Court's holding in *Hernandez*, the district court's suppression ruling should be upheld on the theory that Officer Todd made a "reasonable mistake of law" as to the requirements of Section 545.060(a). *See Heien v. North Carolina*, 574 U.S. 54, 57 (2014) (holding that if officer initiates traffic stop based on "reasonable mistake of law" as to whether defendant's conduct violated traffic statute, stop is "lawful under the Fourth Amendment."). In the State's view, "In light of the conflicting opinions from the appellate courts and the statute's ambiguity, an officer could reasonably conclude that Appellant's conduct violated the statue" and that "after *Leming*, *Hernandez* is no longer good law."

We disagree. The "reasonable mistake of law" doctrine applies only to "reasonable mistakes," and those mistakes must be "objectively reasonable." *Id*. at 66. Thus, "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Id*. at 67. For the "reasonable mistake of law" doctrine to apply, "the statute must pose a 'really difficult' or 'very hard question of statutory interpretation,'" and such cases are "exceedingly rare." *Heien v. North Carolina*, 574 U.S. 54, 70 (2014) (Kagan, J.,

11

concurring).  For example, if an ambiguous statute has "never been previously construed" by the appellate courts, then an officer's mistaken interpretation of the statute may be objectively reasonable.  *See Heien*, 574 U.S. at 67–68; *see also Heien*, 574 U.S. at 70 (Kagan, J., concurring) ("If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake.  But if not, not.").

This is not one of those "exceedingly rare" cases.  To the extent that Section 545.060(a) could be considered ambiguous, any such ambiguity was resolved by this Court in 1998 when this Court in *Hernandez* construed the statute.  As the *Leming* plurality noted, by 2016, "[a]ll of the courts of appeals that have addressed the question since—about half of them—have adopted the Third Court's conclusion, without seriously questioning that court's reasoning." 493 S.W.3d at 557.  It is true that after 2016, many of those other courts have changed course and followed the reasoning of the *Leming* plurality.  *See Dugar v. State*, 629 S.W.3d 494, 499–500 & n.28 (Tex. App.—Beaumont 2021, pet ref'd) (collecting cases and observing that "the intermediate courts are now split about what proof is required to establish a driver violated the maintain-a-single-lane statute, section 545.060").  But those other courts do not govern this jurisdiction.  *Hernandez* remains the law here.  We conclude that it would not be objectively reasonable for an officer in this Court's jurisdiction to be mistaken about the requirements of Section 545.060(a), as announced by this Court over two decades ago in *Hernandez*, when this Court has never stopped following *Hernandez* or cast any doubt on its continuing validity, and there is no binding precedent from the Court of Criminal Appeals overruling *Hernandez*.  To conclude otherwise would effectively eviscerate this Court's holding in *Hernandez* and allow officers to stop motorists for failing to maintain a single lane under any circumstances, even when there is no evidence that it was unsafe to do so.  This Court has long

held that a violation of Section 545.060(a) requires movement from one's lane in a manner that is unsafe, and it is not objectively reasonable for an officer in this Court's jurisdiction to believe otherwise.[4]

We sustain Daniel's sole issue on appeal.

---

[4] Although the "reasonable mistake of law" doctrine does not "examine the subjective understanding of the particular officer involved," *Heien v. North Carolina*, 574 U.S. 54, 66 (2014), we note that Officer Todd, in his testimony on cross-examination, appeared to understand that Section 545.060(a) included a requirement that the failure to maintain a single lane of traffic be unsafe:

Q.    Now, Texas Transportation Code, that's the code section you're citing for staying within one lane of travel. You're familiar with that section; is that correct?

A.    Yes, sir.

Q.    And in that section, what it states is that, "A driver must drive as nearly as practical, entirely within one lane"; isn't that correct?

A.    Yes, sir.

Q.    And it also states, "and not move from that lane unless it can be done safely." That's what the statute requires; isn't that correct?

A.    Yes, sir.

Q.    So the statute doesn't say that it's against the law to leave your lane simply and absolutely, does it? In other words, you can—so long as you stay within the lane as nearly as practical as possible; isn't that correct?

A.    And safely, yes, sir.

Q.    And requirement, "and that you cannot move safely"; isn't that correct?

A.    Yes, sir, it is.

13

## CONCLUSION

We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

_____
Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Kelly
  Dissenting opinion by Justice Goodwin

Reversed and Remanded

Filed:   December 23, 2021

Publish

14